UNITED STATES of America, Plaintiff,

v.

Wayne WARDEN, Defendant.

No. 94–10040–01.

United States District Court, D. Kansas.

May 15, 1995.

---

Carl Warner Eisenbise, Leslie F. Hulnick, Charles A. O'Hara, O'Hara, O'Hara, & Tousley, Wichita, KS, for defendant.

Lanny D. Welch, Office of U.S. Atty., Wichita, KS, for U.S.

## MEMORANDUM AND ORDER

THEIS, District Judge.

The defendant Wayne Warden is charged by superseding indictment with possession of methamphetamine with intent to distribute, possession of marijuana with intent to distribute, use of a firearm during a drug trafficking offense, and possession of a firearm with serial number obliterated. Doc. 43. This case comes before the court on the defendant's motion to suppress (Doc. 55) and motion for hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (Doc. 56). The court conducted an evidentiary hearing on April 21, 1995. The court has considered the testimony of the witnesses and is prepared to rule. For the reasons set forth herein, the court denies the defendant's motion to suppress.

The affidavit of Bruce Morton, Sedgwick County Sheriff's Deputy assigned to the Drug Enforcement Administration Task Force, was presented to the Magistrate Judge to obtain a search warrant. The affidavit provides as follows. On March 24, 1994, at approximately 5:37 a.m., Sedgwick County Sheriff's Deputies Greg Lathrop, Rusty Crafton and Kevin Bradford were dispatched to 14420 West 101st Street North, Sedgwick County, Kansas on a report of domestic violence. The call to 911 was reported to have come from Lacy Pore, the daughter of the defendant, who reported to the dispatcher that her father was beating her mother. The deputies made contact with Sandra Warden inside the residence. She asked the deputies to leave, stating that her husband had only pushed her. Sandra Warden was arrested on an outstanding warrant. Wayne Warden was arrested for domestic violence for pushing his wife.

After the defendant was arrested, the officers searched him. The search turned up

approximately $5,800 in cash on his person, two white pills identified as Lortab (a controlled substance) and a small baggie containing a white powder. An open dresser drawer was observed next to the bed where the defendant had been observed. Inside this open drawer were a .45 caliber pistol, a 9 mm pistol and a tin containing a white powder residue. The deputies noticed that the television the defendant was watching in the bedroom was a closed circuit television monitor. Also on the bed was a purse which contained identification of Sandra Warden and a quantity of a substance believed to be marijuana.

Deputies interviewed Lacy Pore, the daughter of the defendant and Sandra Warden, about the source of her parents' income. Lacy said she thought her parents sold drugs, because she saw her father with a large plastic baggie containing a white powder and with a great deal of marijuana. Lacy stated that her father keeps a can in the garage that he brings out when people come over, and takes back out to the garage when they leave. Her father has instructed her never to touch this can or the safe he keeps in the house.

Prior to the date of this arrest, Morton had received information from a confidential informant that Wayne and Sandra Warden were involved in trafficking methamphetamine from their residence. Surveillance on March 9, 1994 by Deputy Bradford showed over 20 cars arriving, staying for only a few minutes, and then leaving during the course of a one hour period in the middle of the night.

The white powder substance located on the defendant Wayne Warden field tested positive for methamphetamine. The suspected marijuana also tested positive for marijuana. Affidavit of Bruce Morton, Att. to Doc. 56. Based on this information, Magistrate Judge Humphreys issued a search warrant.

At the evidentiary hearing, the testimony of the Sheriff's officers was consistent with the information contained in the search warrant affidavit. Deputy Gregory Lathrop testified that on March 7, 1994, he received information from a confidential source that Wayne and Sandra Warden were possibly manufacturing methamphetamine at their home at 14420 West 101st Street North. Lathrop verified that the Wardens lived at the address on West 101st Street North, checked for outstanding warrants, found an outstanding warrant for Sandra Warden, and obtained photos of the Wardens from Sheriff's Department files. On March 9, 1994, Deputy Bradford was watching the Warden residence from approximately 3:20 a.m. to 4:15 a.m. Bradford observed approximately 20 cars arrive at the residence, stay a short time, and leave. On two or three occasions between March 9 and March 24, Lathrop went by the Warden residence but did not see any unusual activity.

On March 24, 1994, Lathrop and Deputy William Crafton were dispatched to the Warden residence on a domestic disturbance call. The dispatcher learned that the caller was a juvenile who reported that her father was beating her mother. Lathrop arrived at approximately 5:48 a.m., Crafton about two minutes later. The deputies knocked on the front door. The door was answered by Lacy Pore, who motioned for them to come in quickly. Lacy stated that her parents were in the bedroom.

When the officers entered the home, they encountered Sandra Warden in the kitchen area. Sandra was crying and appeared to be upset. Crafton described her as being "frantic." She had a pronounced red mark on the left side of her face. Sandra denied that her husband had hit her. When Lathrop asked why Lacy might have called 911, Sandra admitted that her husband had pushed her. Lathrop testified that then he proceeded to the bedroom. Lathrop had his hand on his gun at this point. Lathrop testified that he had received information that there might have been guns in the residence. Lathrop opened the door and observed the defendant sitting up on the bed watching television. Lathrop asked to see Warden's hands, then ordered Warden to stand up. Lathrop handcuffed Warden and arrested him for domestic violence.

At this point, Sandra Warden became very upset and began yelling at the officers. Lathrop told Crafton to place Sandra Warden

under arrest on an outstanding traffic warrant.

Lathrop searched the defendant's pockets and removed the Lortabs and approximately $5,800 in currency. Lathrop observed what appeared to be a gun located in an open drawer and also observed an open purse on the bed. After both Wayne and Sandra Warden were removed from the home and placed in separate squad cars, Lathrop returned to the home and looked inside the open purse and open drawer. Lathrop observed some rifles in the closet, but did not seize those.

Lathrop and Crafton spoke to Lacy at the home. Lacy indicated that she was very scared and that she was tired of her father hurting her mother. Lacy also stated that she believed her parents were dealing drugs from the house. Lacy stated that her mother did not work and that her father rarely worked. Lathrop interviewed Lacy later that day at her uncle's house. Lacy provided Lathrop with the same general information about her parents at this second interview.

Lathrop did not search the entire trailer prior to obtaining the search warrant. Lathrop admitted that they did not have enough evidence prior to the 911 call to obtain a search warrant.

Detective Morton testified that he had spoken to the confidential informant (CI) in this case. Morton would not call this CI "reliable" and acknowledged that he had never used this CI before. Morton conceded that, standing alone, the information from the CI was not worth a great deal of weight.

Lacy Pore, now age 12, testified and admitted that in the early morning hours of March 24, 1994, she called 911 because she heard her parents arguing. Lacy denied that she invited the officers into the house. Lacy testified that Lathrop pushed her out of the way. Lacy testified that after arresting her father, Lathrop searched the house for about 15 minutes, opening doors, cabinets, the microwave oven and the refrigerator. Lacy denied telling Lathrop that her parents were involved in drug dealing. Lacy admitted that she later told Morton that she was concerned that her father would think everything was her fault. The court found Lacy's testimony only partially credible.

Sandra Warden, the defendant's wife, also testified at the hearing. She testified that Lathrop kept his hand on his gun during the entire time he was in the Warden home. Sandra testified that she told the officers they could not go into the bedroom, but that the officers went in anyway. She denied that she had been crying and denied that any domestic violence had occurred. Sandra denied having any drugs in the home or in her purse. She did admit that on an earlier occasion, 911 had been called because she had been beaten by her husband. The court found Sandra Warden's testimony only partially credible.

Sandra Warden's brother Christopher Pore testified at the hearing. Pore received a call from law enforcement authorities at approximately 6:15 on the morning in question. Pore was asked to come to the Warden home and pick up Lacy and her friend. When Pore arrived at the Warden home, he was told by the officers that Sandra and Wayne Warden had been arrested, that the officers were waiting on a search warrant, and that the officers wanted him to pick up the girls. In the afternoon or evening of March 24, 1994, Pore received a call from Agent Morton. In response to Pore's questioning regarding what was going on, Morton responded that the officers went to the Warden home on a 911 call, but that they had been planning on going out there anyway. Morton stated that the officers had been watching the house for approximately 30 days and that they had received information about a methamphetamine lab on the property. Morton stated that the 911 call provided the ideal circumstance for the officers to enter the home.

In the motion to suppress, defendant asserts that his residence was entered on a pretext, that illegally seized evidence was submitted in support of the application for search warrant, that the affidavit did not demonstrate probable cause, and that there was no basis for determining the veracity of the confidential informant. In the motion for *Franks v. Delaware* hearing, the defendant asserts that DEA Task Force Agent Morton

intentionally or recklessly omitted material facts from his affidavit submitted to the Magistrate Judge in support of the application for search warrant, that Agent Morton also made knowing and intentional false statements or made statements with reckless disregard for the truth, and that these statements were material to the finding of probable cause.

■ The affidavit is summarized above. The matters set forth therein clearly establish probable cause to search the residence. *See United States v. Wicks*, 995 F.2d 964, 972–73 (10th Cir.1993) (standards governing determination of probable cause). The court finds no evidence of pretext in either the entry into the home or the defendant's arrest. Since Lacy was only 11, she may not have been able to consent to the entry into the home. However, the court has no concern about the validity of the initial entry into the home. The officers were responding to a 911 call reporting a beating. The officers were justified in entering the home to investigate the complaint.

■ The testimony of the officers at the hearing indicated that Sheriff's Department policy mandates arrests in all cases reporting domestic violence. The existence of this policy is not challenged. Likewise, the defendant does not challenge that "pushing" constitutes a battery under Kansas law. Sandra Warden's admission that her husband pushed her provided probable cause to arrest Wayne Warden for battery. The search of the defendant and the area within his immediate control were incident to that arrest.

■ The defendant argues, based on *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), that the officers submitted false information to the Magistrate Judge. Under *Franks v. Delaware*, if the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included in the affidavit, and if the allegedly false statement was necessary to the finding of probable cause, then a hearing must be held at the defendant's request. If at the hearing, the allegation of falsity or reckless disregard is established by

the defendant by a preponderance of the evidence, and with the false material excised the affidavit fails to establish probable cause, then the search warrant is voided and the fruits of the search excluded. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). The burden is on the defendant to demonstrate deliberate falsity or reckless disregard for the truth by the affiant, supported by an offer of proof. *United States v. $149,442.43 in United States Currency*, 965 F.2d 868, 874 (10th Cir.1992).

■ After considering the testimony presented at the hearing, the court finds that the defendant's allegations of falsity or reckless disregard have not been established by a preponderance of the evidence.

The defendant argues that Agent Morton intentionally or recklessly failed to inform the Magistrate Judge of Deputy Lathrop's observations of defendant's residence from March 9, 1994 to March 24, 1994. Morton's affidavit discussed Deputy Bradford's observations from surveillance on March 9, 1994, that many cars came and went during one hour in the middle of the night. As noted in his report, Lathrop conducted surveillance on "several other nights" between March 9 and March 24, 1994 without observing anything unusual. The defendant argues that the inclusion of these facts would negate a finding of probable cause. The defendant further argues that the failure to inform the Magistrate Judge of the fifteen day period of observation conducted by Lathrop in which he observed nothing unusual is an intentional or reckless material omission.

The evidence presented at the hearing indicated that Lathrop observed the residence a couple of times during the month of March. Contrary to the implication contained in the defendant's brief, the residence was not under constant surveillance during the month of March. The failure to observe anything suspicious on two or three other occasions during the course of one month does not detract from a finding of probable cause. The inclusion of these facts would not eliminate probable cause. The fact that a great deal of traffic was observed on one night is consistent with the operation of a drug lab. The

failure to include this information in the affidavit was not misleading.

The defendant next asserts that Morton intentionally or recklessly misled the Magistrate Judge by including in his affidavit the details of an illegal search conducted by Lathrop and Crafton and that Morton failed to include information in the affidavit which would have shown the pretextual nature of the search. The defendant argues that Lathrop used the report of domestic violence as a pretext to conduct an illegal search of the residence. As noted above, the court finds no evidence of pretext in the domestic violence arrest. The search incident to that arrest was valid.

The defendant argues that on March 8, 1994, Lathrop had attempted to make a warrantless entry into the residence. Defendant asserts that at approximately 4:10 a.m., Lathrop arrived at the defendant's residence to check on the source of smoke seen from the roadway. Lathrop encountered Sandra Warden, who was allegedly burning trash in a trash barrel outside the residence. According to the defendant, Lathrop twice indicated that he wanted to check if the residence was on fire.

The court finds that Lathrop approached the residence on March 8, 1994 to check on the source of the smoke. The court finds no credible evidence to support the assertion that Lathrop was trying to gain entry into the home.

The defendant argues that after March 8, 1994, Lathrop conducted regular surveillance of the residence and did not find anything unusual. The defendant's argument is unsupported by the evidence. No regular surveillance was conducted.

The defendant also argues that Morton committed misstatements and omissions in describing the search conducted by Lathrop and Crafton following the 911 call and arrest of the defendant and Sandra Warden. The defendant complains about the failure to include in the affidavit the statements of Sandra Warden that there was no problem and that her husband had not beaten her. The defendant complains further that the affidavit fails to disclose that there was no further investigation of the domestic violence complaint and no interview of the defendant prior to his arrest. Defendant argues that the inclusion of this information in the affidavit would have established a lack of probable cause for Lathrop to enter the residence and arrest the defendant. The defendant also complains that the affidavit fails to disclose that the search of the defendant's bedroom was conducted only after the defendant had been arrested and handcuffed, and was a thorough search of the entire home.

Sandra Warden's statement that her husband had pushed her was sufficient to justify the arrest of the defendant for domestic violence. There was no challenge to the existence and application of the Sheriff's Department's mandatory arrest policy for domestic violence calls. State law and department policy mandated the arrest. It was not necessary for the deputies to interview the defendant prior to his arrest. Lathrop testified that he could not ask the defendant any questions regarding the domestic violence charge until after arresting the defendant and reading the defendant his rights.

The court did not find credible the testimony that Lathrop conducted a thorough search of the entire house prior to obtaining the search warrant. The court finds that Lathrop made a limited search of the area where the defendant was arrested. The search of the defendant and a portion of the bedroom was proper as a search incident to a lawful arrest and/or plain view search.

The defendant next argues that Morton's affidavit intentionally or recklessly misstates the statements made by Lacy Pore. At the hearing, Lacy Pore denied making the statements attributed to her regarding seeing evidence of drugs in the home. The court did not find Lacy's denials to be credible. The court concludes that she made the statements attributed to her in the affidavit.

The court concludes that the defendant failed to establish by a preponderance of the evidence the falsity of the statements in the warrant affidavit. The court found the testimony of the officers more credible than the testimony of the defendant's wife and daughter. While it may indeed have been serendipitous (from the officers' standpoint) that

Lacy Pore called 911 on the date in question, it is not disputed that she called 911. It is not disputed that Lacy called to report a domestic violence situation of some sort. Given her age, Lacy may not have been able to give consent to the police entry into the home. However, the court does not believe that consent is necessary in this situation. It cannot seriously be argued that the officers lacked the authority to enter the home to investigate the report of violence received in a telephone call to the 911 emergency number.

In the memorandum in support of the motion to suppress, submitted on the date of the hearing, the defendant repeats some of his prior arguments. The court cannot find the defendant's arrest to be a pretext. Sandra Warden's statement to the officers was sufficient to justify the arrest. The fact that neither the defendant nor his wife consented to the officers' entry into the home is not determinative. While the defendant argues that there was nothing to suggest that anyone's life was in danger, the court must disagree. The officers had very limited information regarding the situation in the Warden home. For all the officers knew, Sandra Warden's life was in danger. The defendant cites no authority for his argument that the officers could not enter the home to investigate the 911 call. The court is not troubled by the officers' failure to interview Lacy immediately about the basis for her call to 911. Sandra Warden appeared almost immediately to discuss the situation with the officers. The initial limited search of the person of the defendant and the bedroom was lawful as a search incident to arrest and/or plain view search. The subsequent search of the home was conducted pursuant to a search warrant. Consent from the defendant or his wife was not necessary.

The defendant argues that the affidavit fails to set forth any facts from which it could be concluded that any evidence of a crime could be found at the place to be searched. The court has already rejected the defendant's argument that the facts set forth in Morton's affidavit fail to establish probable cause. Since there was no *Franks* violation, the court need not consider the impact of removing various statements from the affidavit. The court finds that the affidavit does provide probable cause to believe that contraband could be found at the Warden residence.

The defendant next argues that the affidavit contained no facts from which the Magistrate Judge could determine the veracity of the confidential informant or his/her basis of knowledge of alleged drug activity. Morton admitted at the hearing that his affidavit did not refer to this confidential informant as "reliable." The information provided by the informant was not necessary to the determination of probable cause. The tip from the confidential informant appears to have caused the investigation to begin. The defendant cites no authority requiring law enforcement officers determine the veracity of an informant before investigating a tip. If Morton had relied on nothing more than the information provided by the informant, the court would be faced with an entirely different situation.

Since there is no basis for finding the warrant invalid, the court need not address the defendant's arguments regarding the good faith exception to the exclusionary rule.

**IT IS BY THE COURT THEREFORE ORDERED** that defendant's motion to suppress (Doc. 55) is hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion for hearing pursuant to *Franks v. Delaware* (Doc. 56) is moot.