(942 P.2d 660)
No. 77,291

STATE OF KANSAS, *Appellant,* v. RANDOLPH S. GILBERT and POPPY JOLEEN GILBERT, *Appellees.*

Opinion filed July 25, 1997.

*Thomas R. Stanton,* assistant county attorney, *Julie McKenna,* county attorney, and *Carla J. Stovall,* attorney general, for appellant.

*James L. Sweet,* of Sweet & Sheahon, and *Roger D. Struble,* of Blackwell, Blackwell & Struble, of Salina, for appellees.

*Jared S. Maag,* assistant attorney general, for *amicus curiae* Attorney General Carla J. Stovall.

Before BRAZIL, C.J., MARQUARDT, J., and EDWARD E. BOUKER, District Judge, assigned.

BOUKER, J.: The State brings this interlocutory appeal challenging the district court's decision to grant the motions of Randolph S. Gilbert and Poppy Joleen Gilbert to suppress evidence obtained during a search of their residence.

Randolph and Poppy were each charged with three counts of endangering a child, contrary to K.S.A. 21-3608; one count of possession of marijuana, contrary to K.S.A. 1995 Supp. 65-4162(a)(3); one count of possession of paraphernalia, contrary to K.S.A. 65-4152; and one count of possession of cocaine, contrary to K.S.A. 1995 Supp. 65-4160. Randolph was also charged with two counts of battery, contrary to K.S.A. 1994 Supp. 21-3412(a).

Prior to trial, Randolph and Poppy filed separate motions to suppress. On July 1, 1996, a hearing was held, and the trial court granted the motions. The State appeals.

On January 24, 1996, police officers Patrik W. Goss and Shari Lanham responded to a report of a domestic dispute. Christina Marie Simms, who had made the report, appeared to be very upset, nervous, and worried about getting the police officers to go to the Gilberts' trailer, which was about a half a block away.

Simms told the police that while she was at the Gilberts, Randolph had hit both her and Poppy. Both officers testified that Simms had a big red mark and a scratch on her neck. Officer Goss testified that initially Simms told the police that Poppy had been hit, but that it was later determined that Randolph had slapped Poppy.

Upon arriving at the trailer, it was clear to Officer Goss that some sort of disturbance had taken place as there were several broken beer bottles in the street and driveway and a trash dumpster had been overturned. Officer Goss testified that the beer bottles had to have been broken recently because the spilled beer had not yet frozen, even though the temperature that night was well below freezing. Officer Lanham testified that the trailer had a window that was broken.

As Officer Goss approached the Gilberts' trailer, Poppy came to the front door, saying, "He's not here, he's not here." Officer Goss

testified that it was obvious that Poppy was extremely upset and had been crying. When Officer Goss asked Poppy if Randolph was in the trailer, she replied, "You're not coming in here."

Officer Goss then placed his hand on Poppy's shoulder and moved her aside, entering the trailer. Officer Goss admitted that he went into the trailer against Poppy's will.

Officer Goss testified regarding why he went into the trailer:

> "Based on the information from Ms. Simms, Ms. Gilbert's reactions before I even asked her anything was 'He's not here, you're not coming in here.' All that, the demeanor, her—it was obvious that a domestic violence had taken place. Based on the information I had received from my original reporting party, there was no doubt in my mind I was going in there to make sure everything was okay and check the welfare before I left."

Officer Goss also testified that he went into the trailer to make sure that Randolph was no longer inside and that everyone was all right.

During cross-examination, Officer Goss admitted to testifying at the preliminary hearing that his sole purpose for going into the trailer was to look for Randolph. Officer Goss also admitted that Poppy had not given him any indication that Randolph was inside the trailer other than her defensiveness. Officer Goss also testified that he has been involved in domestic violence situations in which the victim would not allow him to enter the residence because he or she was hiding the abuser.

When Officer Goss went into the master bedroom, he noticed that there was a light coming out from underneath the closet door. Believing that Randolph was hiding in the closet, Officer Goss drew his gun and opened the closet door. Instead of finding Randolph, Officer Goss found marijuana plants, which were being grown in the closet.

After checking the rest of the trailer for Randolph, Officer Goss completed the domestic violence investigation. Officer Goss testified that when he saw Poppy in a better light, he noticed that she had a swollen lip and blood on her shirt. At first, Poppy told Officer Goss that Randolph had hit her, but then she changed her story and told him that she had bitten her lip during the argument.

The drug task force was called and a search warrant was obtained.

At the suppression hearing, the State presented the testimony of Nicky Ludes and Sandra Wilcox, employees of the Domestic Violence Association of Central Kansas, who both testified that many victims of domestic violence are dependent upon the abuser both emotionally and financially and, therefore, often attempt to protect the abuser.

Lieutenant Carson Mansfield of the Salina police department testified that concerning domestic violence situations, police officers are generally trained to identify and separate the parties involved and to check out the location to see if anyone has been hurt. Lieutenant Mansfield also testified that police officers are trained to check a residence without a warrant, if they have cause to believe that a domestic violence situation exists.

In a domestic violence situation, safety is the primary concern; therefore, police officers are trained to go inside a residence to rule out that there is another injured party inside the house or that the perpetrator is inside, threatening the victim to get rid of the police. Mansfield testified that police officers are also trained to check a residence because it is sometimes difficult to identify the victim.

After hearing extensive closing arguments, the trial court took the matter under advisement. More than a week later, the trial court issued a memorandum decision, which stated, in part:

"The Court finds that Officer Goss's entry into the defendants' home without a warrant for arrest to be in violation of those rights guaranteed [them] by the Fourth Amendment of the Constitution of the United States and the laws of Kansas. On balance, Fourth Amendment protection must prevail over the State's argument that exigent circumstances exist per se in domestic violence cases. This Court acknowledges and appreciates the difficulty and dangers encountered by law enforcement officers investigating domestic violence. However, this Court sees no justification in abridging Fourth Amendment rights regardless of the kind of violation which takes place."

Our standard of review is set forth in *State v. Webber*, 260 Kan. 263, Syl ¶ 3, 918 P.2d 609 (1996), *cert. denied* 519 U.S. 1090 (1997):

"In reviewing a trial court decision regarding the suppression of evidence, we review the factual underpinnings of the decision by a substantial competent evidence standard of review and review the ultimate legal decision drawn from those facts de novo with independent judgment."

In the present case, the police officers initially entered the Gilberts' home without a warrant.

"Searches conducted by the State outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the 4th Amendment—subject only to a few specifically established and well-delineated exceptions. Absent one of these exceptions the seizure of items not particularly described in a search warrant is unconstitutional." *State v. Galloway*, 232 Kan. 87, Syl. ¶ 1, 652 P.2d 673, *cert. denied* 475 U.S. 1052 (1982).

See *State v. Platten*, 225 Kan. 764, Syl. ¶¶ 3 and 4, 594 P.2d 201 (1979).

In *Monroe v. Darr*, 221 Kan. 281, 287, 559 P.2d 322 (1977), the Kansas Supreme Court stated: "Probable cause alone is not sufficient to justify a warrantless search or entry into a private residence. In addition to probable cause it is necessary for the police officer to show exigent circumstances which make an immediate warrantless search imperative."

In determining whether exigent circumstances existed, the *Platten* court relied upon the nonexclusive list of factors set forth in *United States v. Reed*, 572 F.2d 412, 424 (2d Cir.), *cert. denied* 439 U.S. 913 (1978):

"(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause; (4) strong reasons to believe that the suspect is in the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended [;] and (6) the peaceful circumstances of the entry. It is also recognized that the possible loss or destruction of evidence is a factor to be considered. [Citations omitted.]" 255 Kan. at 770.

Whether a domestic violence situation creates an exigent circumstance justifying the warrantless search of a private residence is a question of first impression in Kansas, although the issue was briefly considered in *U.S. v. Warden*, 886 F. Supp. 813 (D. Kan. 1995).

In *Warden,* two officers were dispatched to the defendant's residence on a domestic disturbance call, which had been placed by the defendant's 11-year-old daughter. The daughter ushered the officers into the home, where they found the girl's mother crying in the kitchen. Although the mother had a pronounced red mark on the side of her face, she denied that the defendant had hit her, but admitted that he had pushed her. The officers then entered a bedroom, and upon finding the defendant, arrested him for domestic violence.

One of the deputies searched the defendant and found $5,800 in currency in his pockets. The officer also observed a gun and a tin, which contained cocaine, in an open drawer, and an open purse, which contained a baggie of marijuana, on the bed. The daughter told the officers that she believed that her parents were dealing drugs. A search warrant was later obtained.

The defendant had appealed the denial of his motion to suppress the evidence based upon an illegal entry. The *Warden* court found that although the daughter may have lacked the ability to consent to the officers' entry, "the court has no concern about the validity of the initial entry into the home. The officers were responding to a 911 call reporting a beating. The officers were justified in entering the home to investigate the complaint." 886 F. Supp. at 817.

Outside jurisdictions have generally recognized that the "emergency doctrine" exception to the warrant requirement, when applied to domestic violence situations, is an example of an exigent circumstance. *People v. Thompson,* 770 P.2d 1282, 1285 (Colo. 1989); see *State v. Menz,* 75 Wash. App. 351, 353, 880 P.2d 48 (1994), *rev. denied* 125 Wash. 2d 1021 (1995). The exception applies when:

"(1) the officer subjectively believed that someone likely needed assistance for health or safety reasons; (2) a reasonable person in the same situation would similarly believe that there was a need for assistance; and (3) there was a reasonable basis to associate the need for assistance with the place searched." *Menz,* 75 Wash. App. at 354.

In *Menz,* the police responded to a domestic violence call at the defendant's residence. Upon their arrival, the officers found the front door to the home standing open and the household lights on.

Although no one responded to the officers' announcement of their presence, they could hear a television playing inside. The officers testified that they then entered the home because they were concerned that an injured person might be hiding inside or that there might be someone inside who was unable to respond due to his or her injuries or because he or she was being threatened with violence. While searching a bedroom, the police discovered marijuana plants that were being grown.

The defendant in *Menz* moved to suppress the evidence of the marijuana on grounds that the search was illegal. The trial court denied the motion, and the Washington Court of Appeals affirmed. 75 Wash. App. at 356.

Concerning domestic violence situations, the *Menz* court stated:

"We recognize that two important policies are competing in this case. The first is to allow the police to assist those who are injured and need assistance; as stated in *State v. Raines*, 55 Wn. App. 459, 465, 778 P.2d 538 (1989), *review denied* 113 Wn. 2d 1036 (1990), '[p]olice officers responding to a domestic violence report have a duty to ensure the present and continued safety and well-being of the occupants' of a home. The other policy is to protect citizens against warrantless searches not based on probable cause. Resolution of this competition turns on the facts and circumstances of each case, and in our view the facts of this case fall on the side of allowing the police to help those who need assistance.

"Menz asserts that this holding will lead to the police intruding into private homes based on unreliable anonymous tips. However, we disagree. If police reacting to an anonymous tip of domestic violence find normal circumstances—for example, the house is dark, the front door is closed, no occupant responds to knocking—the tip is not corroborated and entry is not permitted. On the other hand, if the police find abnormal circumstances—for example, the front door is open on a winter night, lights are on, a TV is playing, yet no one answers the door—the tip is corroborated and entry is permitted. In neither case are the police allowed to enter solely by virtue of an unreliable anonymous tip." 75 Wash. App. at 354-55.

In *Thompson*, police officers responded to an anonymous call of a domestic violence dispute. When the officers arrived at the location, they were told by the woman who answered the door, " 'He's gone. Everything's okay.' " 770 P.2d at 1284. However, the woman was holding an ice pack to her head, and her face and the front of her smock were covered with blood. The woman then closed the door and locked it. The officers observed blood on the

front porch, the front door, and the side of the house, and some of the glass in the front door had been broken. One of the officers reached through the hole in the glass and opened the door. The officers then entered the house to determine the extent of the woman's injuries and whether more victims were inside.

When one of the officers informed the woman that he was going downstairs to look for additional injured persons, the woman said, " 'He's gone. You don't have to go down there. This is my house. I wish you guys would get out of here.' " *Thompson*, 770 P.2d at 1284. Nevertheless, the officer went downstairs and discovered marijuana plants that were being grown behind a blanket.

The trial court in *Thompson* determined that, under the circumstances, it was not reasonable for the police officers to have believed that the woman was seriously injured and suppressed the marijuana evidence. The Colorado Supreme Court reversed the trial court, finding that the officers' belief that the woman needed assistance and that there might be additional injured persons inside the house was reasonable.

"We have previously indicated that the presence of an immediate crisis and the probability that assistance will be helpful are factors tending to support a warrantless non-consensual search. [Citations omitted.] The circumstances must be evaluated as they would have appeared to a prudent and trained police officer at the time the decision to conduct the warrantless search is made. [Citations omitted.]

"A prompt and limited warrantless search of a scene at which violence has occurred may also be necessary to determine if there are any injured parties or if the perpetrator of the violence is still on the premises. [Citation omitted.] Such search is strictly circumscribed by the exigency which created its justification and cannot be used to support a general exploratory search. [Citations omitted.]" 770 P.2d at 1285.

The *Thompson* court also noted that nothing in the record indicated that the police officers entered the house for any reasons other than to render assistance and to search for additional victims. 770 P.2d at 1286.

Finally, in *State v. Greene*, 162 Ariz. 431, 784 P.2d 257 (1989), a police officer responded to a domestic disturbance call at the defendant's apartment. The officer entered the apartment after seeing the defendant's wife sitting at a table inside. The wife told

the officer that the defendant had beaten her and then left. The wife began to gather her things in order to temporarily vacate the apartment. The officer followed the wife into a bedroom, where he noticed two Hawaiian leis hanging on a door knob. The officer knew that an assailant in a recent sexual assault case had worn Hawaiian leis around his neck. When the defendant was later confronted with this evidence, he confessed to the assault.

In *Greene*, the trial court suppressed the evidence of the leis, ruling that exigent circumstances did not exist to justify the officer's warrantless entry. The Supreme Court of Arizona reversed, stating that "a warrantless entry can be made into a dwelling if the circumstances are 'those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search until a warrant could be obtained.'" 162 Ariz. at 432-33. In addition, the *Greene* court noted:

"These calls commonly involve dangerous situations in which the possibility for physical harm or damage escalates rapidly. The immediate presence of the officer is essential. To require an officer to obtain a search warrant before entering a dwelling in response to a domestic violence call would be a meaningless delay that could lead to the occurrence of otherwise preventable violence. [Citation omitted.] The call itself creates a sufficient indication that an exigency exists allowing the officer to enter a dwelling if no circumstance indicates that entry is unnecessary. [Citation omitted.]" 162 Ariz. at 433.

Here, neither Simms nor Poppy testified at the suppression hearing. Officer Goss' testimony was uncontroverted, and the material facts are largely undisputed.

Simms told Officer Goss that she and Poppy had been hit by Randolph. Simms had a red mark and a scratch on her neck, and Poppy had a swollen lip. There were signs of a recent disturbance: broken beer bottles, an overturned trash dumpster, and a broken window in the trailer. Poppy responded to Officer Goss' question as to whether Randolph was still in the trailer by refusing to allow him to enter.

Based on Officer Goss' experience with domestic violence situations, Poppy's behavior indicated that she was hiding Randolph in the trailer, possibly against her will.

Under these circumstances, it is clear that Officer Goss had probable cause to believe that a battery had occurred at the trailer and that despite Poppy's protestations, Randolph might still be inside. It was also reasonable for Officer Goss to believe that further violence might occur if he left the scene without making sure that everyone was safe and that it was necessary to enter the trailer to make sure that no further assistance was needed and that the potential for violence had ended.

Based on the case law and, in particular, the three requirements set out in *Menz,* Officer Goss' entry and subsequent warrantless search of the trailer was justified in this case. For this reason, the trial court erred in granting the defendants' motions to suppress.

However, it should be noted that the question of whether exigent circumstances exist to justify the warrantless search of one's home is always dependent upon the particular facts and circumstances of each situation. *Platten,* 225 Kan. at 770; *State v. Timmons,* 218 Kan. 741, Syl. ¶ 7, 545 P.2d 358 (1976); *State v. Schur,* 217 Kan. 741, 745-46, 538 P.2d 689 (1975); see *Greene,* 162 Ariz. at 432-33; *Thompson,* 770 P.2d at 1285; *Menz,* 75 Wash. App. at 355.

Although the trial court set out the relevant facts in its memorandum decision, the trial court's ultimate conclusion indicated that it had not actually considered the facts when formulating its decision. Rather, the trial court ruled that it was unwilling to say that "exigent circumstances exist *per se* in domestic violence cases." (Emphasis added.)

Based on Officer Goss' uncontroverted testimony and the facts being largely undisputed, we find that the trial court erred in suppressing the evidence. The initial entry by law enforcement officers into the Gilberts' home was supported by probable cause, and exigent circumstances existed, under which the warrant requirement was excused.

Reversed.