27 P.3d 873

STATE of Idaho, Plaintiff–Respondent,

v.

Jane WIEDENHEFT, Defendant–Appellant.

No. 26733.

Court of Appeals of Idaho.

June 14, 2001.

Daniel L. Hawkley, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

Jane Wiedenheft appeals from the district court's decision upholding her judgment of conviction for resisting and obstructing an officer following a jury trial in the magistrate's division. Wiedenheft claims the magistrate erred when it denied her motion for judgment of acquittal. We affirm.

## I.

### FACTS AND PROCEDURE

The uncontradicted testimony of the officers at Wiendenheft's jury trial elicited the following facts. At approximately 2:40 a.m. on January 25, 1999, police officers were dispatched to an Ada County residence to investigate a 911 call reporting a possible domestic violence altercation. When officers arrived, the house was dark and there were no noises coming from the home. The officers knocked on the door. An interior light came on and then went off again. Wiedenheft looked out the window and then closed the shade. The officers knocked again and Wiedenheft answered the door. One officer identified himself and explained to Wieden-

heft that they were there to investigate a report of battery. At this time, the officers noticed that Wiedenheft had a red swollen area in the middle of her forehead and appeared to have been recently injured. Wiedenheft also appeared to be shaking slightly, had an unsteady voice, and was visibly upset.

One officer then asked if there was a problem, and Wiedenheft indicated that there was not and refused entry into the home. The officer testified that there was "obviously something amiss" and that he informed Wiedenheft of the need to gain entry to ensure her safety and that of anyone else in the house under the circumstances. The officer asked if he could come in and ensure there was no problem, but Wiedenheft again refused and attempted to close the door. However, the officer stuck his foot in the doorway and leaned forward, and Wiedenheft struck him in the shoulder with the door. The other officer stepped forward to assist and was also struck by the door. The officers removed Wiedenheft from the residence into the front yard where she was placed in handcuffs. Thereafter, Wiedenheft was charged with resisting and obstructing a police officer. I.C. § 18–705.

At the conclusion of the state's case at Wiedenheft's jury trial, the defense made a motion for a judgment of acquittal, asserting that no evidence of exigent circumstances was presented to justify the officers' warrantless entry into Wiedenheft's residence and, hence, no evidence that her resistance to the entry was unlawful. The magistrate denied the motion. The jury found Wiedenheft guilty of resisting and obstructing an officer. The magistrate sentenced Wiedenheft to pay a fine of $75 and $63.50 in court costs. She appealed to the district court, which affirmed. Wiedenheft again appeals.

## II.

### ANALYSIS

When presented with an appeal from a decision of the district court rendered in its appellate capacity, we review the record before the magistrate independently of, but with due regard for, the district court's

decision. *State v. Thompson*, 130 Idaho 819, 821, 948 P.2d 174, 176 (Ct.App.1997). The appellate court independently evaluates whether constitutional requirements have been satisfied in light of the facts found from the record. *State v. Weber*, 116 Idaho 449, 452, 776 P.2d 458, 461 (1989).

▉ Idaho Code Section 18–705 provides:

> Every person who willfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office ... when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), and imprisonment in the county jail not exceeding one (1) year.

The word "duty," as used in I.C. § 18–705, "encompass[es] only those lawful and authorized acts of a public officer." *State v. Wilkerson*, 114 Idaho 174, 180, 755 P.2d 471, 477 (Ct.App.1988). Therefore, "where an individual refuses to obey an order or obstructs an act of a public officer which is contrary to the law, be it statute or constitution, that individual does not violate I.C. § 18–705." *Id.* In the instant case, the answer to whether the officers were attempting to discharge a duty of their office depends on whether there was substantial evidence to support a finding that "exigent circumstances" existed to justify the warrantless entry of Wiedenheft's residence.

▉ The Fourth Amendment to the United States Constitution safeguards the "right of the people to be secure in their ... houses ... against unreasonable searches and seizures." An officer's warrantless entry into a residence is presumptively unreasonable and prohibited by the Fourth Amendment. *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *State v. Curl*, 125 Idaho 224, 225, 869 P.2d 224, 225 (1993). Warrants are not required, however, if a search falls under a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). These exceptions include exigent circumstances. *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Curl*, 125 Idaho at 225, 869 P.2d at 225. Exigent circumstances exist if the facts

reveal a compelling need for official action and no time to secure a warrant. *State v. Wren*, 115 Idaho 618, 624, 768 P.2d 1351, 1357(Ct.App.1989). The burden is on the government to show the applicability of an exception to the warrant requirement. This test is an objective one and should be applied by the court to the facts as known to the officers at the time of the warrantless entry. *See State v. Bower*, 135 Idaho 554, 558, 21 P.3d 491, 495 (Ct.App.2001).

▉ "[T]he question of whether exigent circumstances exist to justify the warrantless [entry] of one's home is always dependent upon the particular facts and circumstances of each situation." *State v. Gilbert*, 24 Kan. App.2d 159, 942 P.2d 660, 666 (1997). A report of domestic violence does not *per se* amount to exigent circumstances. *Id.* The state cites several cases to support its assertion that the facts and circumstances of this case created exigent circumstances. We agree with the position taken by the courts in those cases.

In *State v. Sailas*, 129 Idaho 432, 925 P.2d 1131 (Ct.App.1996), this Court found exigent circumstances to be present where officers received a report of a domestic disturbance and could hear yelling and screaming coming from the apartment when they arrived on the scene. A woman answered the officer's knock at the door and exhibited blood on her nose and hands. Before the officer entered the home, the domestic disturbance continued in the officer's presence and she saw a child in the home. The victim told the officer that she and her boyfriend had been fighting, but insisted that everything was fine.

In *People v. Thompson*, 770 P.2d 1282 (Colo.1989), the Supreme Court of Colorado determined that exigent circumstances were present where police responded to an anonymous call of on-going domestic violence. When police arrived on the scene, they observed several spent .38 caliber casings on the driveway and blood on the front porch, on the front door, and on the side of the house next to the front door. The front door was ajar several inches, and glass in the front door was shattered and completely broken around the doorknob. A woman came to

the door with obvious injuries and announced, ."He's gone, everything's o.k." and then shut the front door and locked it. The officers however entered the residence by reaching through the hole in the door's glass and unlocking the door.

A Colorado appellate court reached the same conclusion in *People v. Mascarenas*, 972 P.2d 717 (Colo.App.1998). In that case, the police received a call of domestic violence from a family member. The family member had received the initial call from her eleven-year-old sister who was in the home during the altercation. When the police responded, a woman answered the door. Her face was flushed, she appeared upset, and she had an old black eye. She denied that there had been any violence, but admitted that she had been in a fight with Mascarenas. One officer testified that victims of domestic violence are often uncooperative and "they tell you nothing happened even if it did."

In *Gilbert*, 24 Kan.App.2d 159, 942 P.2d 660, the Kansas Court of Appeals found exigent circumstances present where police responded to a report of domestic violence made by the victim. When officers arrived at the scene they noticed several broken beer bottles in the street and driveway and that a trash dumpster had been overturned. There was also a window broken out of the home. The officers were confronted at the door by a woman who stated, "He's not here. He's not here." and "You're not coming in here." An officer then placed his hand on the woman's shoulder, moved her to the side, and entered the home.

In *State v. Higgins*, 26 Cal.App.4th 247, 31 Cal.Rptr.2d 516 (1994), a California appellate court determined that exigent circumstances existed where police responded to an anonymous report of "a man shoving a woman around." When police arrived, they saw a man inside the home and heard a shout come from inside. A woman, with obvious injuries, answered the door and appeared extremely frightened, very fidgety and very nervous. The woman told the police she was alone. She further offered officers a "suspicious story" to explain her injuries. Based on these observations, the officers entered the home without a warrant.

In *State v. Menz*, 75 Wash.App. 351, 880 P.2d 48 (1994), the court recognized the two important, competing policies in these types of cases. The first is to allow the police to be able to assist those who are injured and need assistance and to ensure the safety of all of the occupants of a home. The other is to protect citizens against warrantless searches of their home. Resolution of this competition turns upon the facts and circumstances of each case.

 Taking all reasonable inferences from the objective evidence presented in this case in favor of the prosecution, we conclude that this situation was one that compelled official action—exigent circumstances justifying a forced entry. We therefore hold that exigent circumstances existed to justify the officers' warrantless entry into Wiedenheft's residence. Accordingly, the magistrate properly denied her motion for a judgment of acquittal based on the contention that the officers' attempt to enter her house was unlawful. In so holding, we caution, as the Colorado court did in *Thompson*, that a prompt and limited search of the scene should be strictly circumscribed by the exigency, to assist an injured party or deal with the perpetrator, and cannot be used to support a general exploratory search. Thus, an officer may not act outside the scope of the justification for the entry. *See Sailas*, 129 Idaho at 435, 925 P.2d at 1134.

### III.

### CONCLUSION

The district court's decision, upholding Widenheft's judgment of conviction for obstructing an officer, is affirmed.

Judge LANSING, Concurs.

Chief Judge SCHWARTZMAN, Specially Concurring.

I concur in the result reached in this case, but also wish to voice a note of caution and constitutional concern that use of such terminology as "exigent circumstances" and "domestic violence" does not, in my view, give police *carte blanche* to conduct a general

exploratory search or protective sweep of the premises under the facts and circumstances outlined herein. The police had reasonable grounds to lawfully detain and further question the alleged "victim" [now defendant], on the rational suspicion that she might well be connected with a domestic altercation or violence of some kind. Whether this investigation should continue on the threshold of Wiedenheft's premises or inside her front door, she could not peremptorily slam the door in the officers' faces and expect them to fade gently into that good night. On the other hand, given the relatively nonegregious factual scenario facing the officers, coupled with the lateness of the hour, a completely darkened house, no prior history of domestic violence at this location (as far as the record shows) and the "victim's" protestation of no problems, I would uphold only the most *limited* intrusion necessary to dispel the officers' concerns. In my view this would NOT include trooping through every room in the household and rousting everyone present into the front room to conduct a full-scale inquiry at 2:40 a.m. in the absence of more compelling circumstances.

One further point should be mentioned. It seems somewhat ironic that the supposed "victim" of this domestic call is the one who gets hauled out of her home in the wee hour of the morning, cuffed, arrested and charged with a crime. The record herein does not indicate whether anyone else was ever arrested or charged with this suspected domestic abuse. Perhaps a little diplomacy and restraint would have better served to cool down this emotionally charged situation, and still fulfill the Boise Police motto of "to protect and to serve."