**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 34402**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2009 Opinion No. 19 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: March 20, 2009 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ROY ROLAND ARAIZA, SR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ralph R. Blount, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Roy Roland Araiza, Sr. appeals from his judgment of conviction for possession of a controlled substance. Specifically, he challenges the district court's denial of his motion to suppress evidence. We affirm.

**I.**

**FACTS AND PROCEDURE**

At approximately 11 p.m. one night, Officer Dennis Clark of the Jerome County Police Department was on patrol when he observed a man standing at the window of a residence. It appeared to the officer that the man had either just left the house through the window or was attempting to enter through the window. By the time the officer had pulled into the driveway of the residence, the man was no longer in sight. Consequently, Officer Clark knocked on the door and an elderly woman, Mary Mosqueda, answered and after being told about the officer's

1

concern, told him that the man was named Roland and went by "Roy," was now inside the residence, and that everything was fine. When Officer Clark asked to speak with him, Mosqueda beckoned him to the door. The man complied and identified himself as Roland Araiza and indicated that people called him "Roy." Araiza said that he did not have any identification, but provided Officer Clark with his social security number and date of birth. He confirmed that he was the man who had been at the window earlier.

While Officer Clark returned to his vehicle to check the information provided by Araiza, another officer who had arrived on the scene in the meantime stood with Araiza at the door. Araiza had answered the door wearing only unzipped jeans, and asked the officer if he could leave the entrance to put on additional clothing. The officer gave permission, at which time Araiza re-entered the residence and shut the door. After Officer Clark ran a check on Araiza's information and was unable to confirm his identity, he rejoined the second officer at the front door. When the officers knocked, no one answered and they discovered the door was now locked.

A woman who lived near the house then arrived, identifying herself as Mosqueda's daughter. She claimed not to know anyone by Araiza's name and told the officers that there should be no one in the house aside from her mother and the daughter's two young sons. The officers and Mosqueda's daughter continued knocking on the door and windows of the residence and the daughter tried to call her mother on her cell phone, but no one responded and the officers heard no noise coming from the house. A young man, later identified as Mosqueda's grandson, drove up to the scene, and also told the officers that he did not recognize Araiza's name and that no other adult should be in his grandmother's house.

After several minutes of attempting to contact the house's occupants, the officers could see through the windows that Mosqueda and Araiza were in the southwest corner of the house. Concerned for the safety of Mosqueda and her grandsons, the officers forcibly entered the home by breaking down a door. They found Araiza in the back bedroom with Mosqueda, where they arrested him for obstructing a police investigation. Mosqueda then informed them that she had not responded to their shouts and knocking because Araiza had not allowed anyone to answer the door. When asked whether Araiza had any additional clothing to take with him, Mosqueda led the officers to another bedroom and pointed to a jacket and unzipped duffel bag on the floor.

2

Inside the bag, a glass pipe containing burn residue was clearly visible and a subsequent search of the bag revealed additional drug paraphernalia and methamphetamine.

Araiza was charged with possession of a controlled substance, Idaho Code § 37-2732(c)(1), and possession of drug paraphernalia, I.C. § 37-2734A. He filed a motion to suppress the evidence found in the bag, claiming that the warrantless entry into the home was unreasonable. A hearing was held on the motion, during which Mosqueda testified that Araiza had been living with her for approximately five months prior to the incident and that she had told Officer Clark that Araiza was her son. In contrast, Officer Clark testified that he did not believe that Mosqueda had told him that Araiza was her son. The district court denied the motion, and Araiza entered a conditional guilty plea to the charge of possession of a controlled substance, reserving the right to appeal the denial of his motion to suppress. Araiza now appeals.

## II.

## ANALYSIS

Araiza contends that the district court erred in denying his suppression motion because his Fourth Amendment and Idaho constitutional rights were violated when officers forcibly entered his residence without a warrant or exigent circumstances and arrested him for resisting and obstructing a police officer without probable cause.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

### A. Warrantless Entry

In denying Araiza's motion to suppress, the district court first found that there were exigent circumstances justifying the officers' warrantless entry into the residence. Specifically, the court concluded that:

> The officers were well justified in their concern for the well-being of the individuals inside of the residence given the information before them at the time. Officer Clark had seen a man at a window that appeared to be trying to enter the

3

residence, the occupants of the house, while seeming to be under no distress when the officers first went to the door, refused to open the door, answer the phone or respond to the knocking on the windows, the daughter and grandson of Ms. Mosqueda told the officers that there should be no one in the residence except Ms. Mosqueda and her two young grandsons, and they also told the officers that they did not recognize the name of the man inside the house with Ms. Mosqueda. These facts justify the actions of the officers in entering the residence without a warrant to ensure the safety of the citizens within.

The Fourth Amendment, as well as Article I, § 17 of the Idaho Constitution, protect the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The United States Supreme Court has held that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313 (1972). *See also State v. Johnson*, 110 Idaho 516, 523, 716 P.2d 1288, 1295 (1986); *State v. Reynolds*, 146 Idaho 466, 469, 197 P.3d 327, 330 (Ct. App. 2008); *State v. Robinson*, 144 Idaho 496, 498-99, 163 P.3d 1208, 1210-11 (Ct. App. 2007). Such entries and other searches conducted without a warrant are presumed to be unreasonable, *Payton v. New York*, 445 U.S. 573, 586 (1980); *State v. Martinez*, 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct. App. 1996), but there are a few carefully delineated exceptions to this presumption, *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971); *State v. Brauch*, 133 Idaho 215, 218, 984 P.2d 703, 706 (1999). The state bears the burden to show that a warrantless search either fell within one of these well-recognized exceptions to the warrant requirement or was otherwise reasonable under the circumstances. *Reynolds*, 146 Idaho at 470, 197 P.3d at 331; *Martinez*, 129 Idaho at 431, 925 P.2d at 1130.

Here, the district court held that the officers' warrantless entry into the residence was permissible under the exigent circumstances exception, which allows for warrantless searches by state agents when there is compelling need for official action and no time to secure a warrant. *Michigan v. Tyler*, 436 U.S. 499, 509 (1978); *Reynolds*, 146 Idaho at 470, 197 P.3d at 331. The test for application of this warrant exception is whether the facts known to the agent at the time of entry, together with reasonable inferences, would warrant a reasonable belief that an exigency justified the intrusion. *Reynolds*, 146 Idaho at 470, 197 P.3d at 331; *State v. Barrett*, 138 Idaho 290, 293, 62 P.3d 214, 217 (Ct. App. 2003). A law enforcement officer's reasonable belief of danger to the police or to other persons inside or outside the dwelling is one type of exigency that may justify a warrantless entry. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990); *Reynolds*, 146

4

Idaho at 470, 197 P.3d at 331. Thus, the necessity to protect or preserve life or avoid serious injury will legitimize an otherwise illegal intrusion. *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403 (2006). Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Id.*

Idaho appellate courts have addressed numerous cases where the state argued that exigent circumstances--specifically the safety of persons inside a residence--justified a warrantless entry into a residence. In *State v. Rusho*, 110 Idaho 556, 716 P.2d 1328 (Ct. App. 1996), this Court held that exigent circumstances did not exist when police received a call from the defendant's neighbor that the defendant believed an intruder was in her residence. While waiting for the police to arrive, another neighbor and the defendant both entered and exited the house and encountered no intruder. When an officer arrived, he spoke momentarily with the neighbor who told him that the house had been checked and no intruder found, but he did not speak with the defendant and entered the residence. A second officer arrived and the defendant allegedly told him that "there is nobody in there, just forget it." Nevertheless, he entered the residence, where drugs were found. We held that to overcome a homeowner's right to tell the officer not to enter, there must exist probable cause to believe that an intruder actually exists and it must reasonably appear that persons are in immediate danger as a result. *Id.* at 560, 716 P.2d at 1332. In this case, we reasoned, there was no longer an immediate danger as three people had entered and exited the residence without incident. *Id.*

Conversely, this Court has found the existence of exigent circumstances validating warrantless searches of a residence in numerous incidences. In *Barrett*, 138 Idaho 290, 62 P.3d 214, Barrett's neighbor called 911 when he heard a crash from next door and found Barrett on the porch on his knees, indicating that he may have had a heart attack. When an officer arrived on the scene, the front door was wide open and Barrett was lying incoherent outside. He did not respond to any of the officer's inquiries, including whether there were other persons in the residence. The neighbor indicated that other family members lived in the house, but that he had not seen them all day. Several officers identified themselves loudly multiple times, asking any persons inside to come to the front door, but getting no response and hearing nothing from inside, the officers entered the residence and found drugs and paraphernalia in plain view. We concluded that exigent circumstances--namely, the real risk that others were in the house and

may have been unable to respond--validated the warrantless entry, given the unexplained medical emergency that Barrett was suffering and the officers' inability to contact anyone inside the house when they knew that other family members lived there. *Id*. at 294-95, 62 P.3d at 218-19.

We conclude that in the instant case, there existed exigent circumstances that validated the warrantless entry into the residence, given the officers' reasonable concern for the safety of Mosqueda and her two grandchildren. Officer Clark had seen an unidentified man outside the residence--after dark--who appeared to be attempting to enter through a window. The district court found that even after the officers spoke with Mosqueda and Araiza, Araiza's identity was not confirmed--as Officer Clark testified that Mosqueda had not identified Araiza as her son and a check of the identifying information he provided to the officers did not turn up a record. Then, while his identity still remained unclear, Araiza closed and locked the front door and none of the residents would open the door, answer the phone, or respond to knocking on the windows and beckoning from the officers. The officers were provided further reason to be concerned when a woman who identified herself as Mosqueda's daughter denied recognizing Araiza's name and informed them there should be no one else in the residence aside from Mosqueda and the daughter's two young children. Additionally, Mosqueda's grandson arrived on the scene and also denied recognizing Araiza's name and agreed with Mosqueda's daughter that no one else should be in the home aside from his grandmother and two young cousins.

Legitimate concern for Mosqueda and the children had not dissipated prior to the officers making forced entry into the residence. Araiza's identity continued to be unconfirmed and the officers and Mosqueda's daughter had all been unsuccessful in contacting anyone inside the house--thus giving the officers a reasonable concern that Araiza was an intruder and holding Mosequeda against her will. And while Araiza argues on appeal that Mosqueda's calm demeanor when first contacted by Officer Clark and assurances that everything was fine in the residence dispelled any belief that something was amiss, we note that in several cases, we have held that officers are not required to accept the assurances of someone who insists that things are fine within a residence when other circumstances indicate otherwise. *See State v. Pearson-Anderson*, 136 Idaho 847, 850-51, 41 P.3d 275, 278-79 (Ct. App. 2001); *State v. Wiedenheft*, 136 Idaho 14, 17, 27 P.3d 873, 876 (Ct. App. 2001); *State v. Sailas*, 129 Idaho 432, 435, 925 P.2d 1131, 1134 (Ct. App. 1996). Given the ignorance of Araiza's identity claimed by the family

6

members on the scene, it was not unreasonable for the officers to doubt Mosqueda's assurances. It was reasonable for the officers to suspect that Mosqueda, under duress from Araiza or another party inside the home, had told them that everything was fine.

Thus, where Araiza's identity remained a mystery and the officers attempted repeatedly to contact the occupants of the residence without success, and several family members expressed concern that an unauthorized individual was in the residence, we conclude that there existed exigent circumstances to justify the officers' warrantless entry into the residence.

**B.      Arrest**

After determining that there were exigent circumstances validating the officers' warrantless entry into Mosqueda's residence, the district court concluded that there was probable cause for the arrest of Araiza, citing this Court's holding in *Wiedenheft*, 136 Idaho 14, 27 P.3d 873, where we upheld the conviction of an individual who attempted to prevent law enforcement officers from entering a residence by trying to close the door while the officers were attempting to investigate a report of battery. There, we found that exigent circumstances had existed to permit the officers to enter the residence without a warrant, and that because the officers were justified in entering the residence, the defendant's actions in attempting to prevent their entry was sufficient to constitute obstructing a police officer. Applying *Wiedenheft*, the district court concluded in this case that since exigent circumstances existed for the officers to enter the residence without a warrant, Araiza's actions in preventing any of the occupants from answering the door or talking to the officers interfered with the officers' attempts to discharge their lawful duties and resulted in probable cause to justify an arrest for obstructing a police officer.

We agree with the district court that *Wiedenheft* is analogous to the instant case. Here, the officers were legitimately investigating suspicious circumstances and needed to speak with Mosqueda in order to further that investigation. Thus, by preventing Mosqueda from answering the knocks of the officers, Araiza delayed and obstructed the lawful discharge of the officers' duties. *See* I.C. § 18-705. The arrest was therefore based on probable cause and lawful.

**III.**

**CONCLUSION**

Because the district court correctly determined that exigent circumstances were present to justify the warrantless entry and correctly determined that probable cause existed for an arrest on

7

obstructing a police officer, it was not error for the district court to deny the motion to suppress. Accordingly, Araiza's judgment of conviction is affirmed.

Chief Judge LANSING and Judge PERRY **CONCUR**.