**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40739**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 538 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: May 30, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DESIRAE AMANDA TRACY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Patrick H. Owen, District Judge.

Withheld judgment for possession of a controlled substance, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett LLP; Deborah Whipple, Boise, for appellant. Deborah Whipple argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

---

GUTIERREZ, Chief Judge

Desirae Amanda Tracy appeals from the withheld judgment entered upon her conditional guilty plea to possession of a controlled substance (marijuana). Tracy argues that the district court erred by denying her motion to suppress. Specifically, Tracy contends that the district court erred by finding that an exigent circumstance justified the warrantless entry into Tracy's apartment. For the reasons that follow, we affirm.

## I.

## FACTS AND PROCEDURE

A 911 dispatcher received a morning telephone call that reported a possible domestic disturbance at an apartment in Boise. The caller reported hearing loud noises and crying and thought that a female was being thrown inside the apartment occupied by Tracy, her husband, and children. Tracy's husband had left the apartment, according to the 911 caller. In addition, the 911 caller mentioned prior domestic disturbances between the Tracys. Two Boise Police

Department officers were dispatched to the apartment and, en route, one of the officers spoke to the 911 caller, a neighbor of Tracy. When the officers arrived at the apartment, one of the officers knocked on the front door. Tracy answered, and the officers saw one child (the older child) in the apartment from their vantage point outside the front door. After explaining the reason they were there, the officers were informed by Tracy that her husband was gone and that she had a second child (the younger child) upstairs. The officers asked to come in the apartment, but Tracy refused and volunteered to bring the younger child to the officers. One officer, who testified as to her experience with both child abuse cases and domestic disturbance cases, recalled that she was concerned at that point and "thought it was highly likely that the male subject . . . was most likely upstairs." Tracy proceeded upstairs and returned with the younger child.

When Tracy returned with the younger child, the officers saw that the child had red marks and indentations over his face, arms, and stomach. After one of the officers asked Tracy what was wrong with the younger child, Tracy responded that the child had been sleeping. According to one officer, she was not satisfied with Tracy's response about the younger child and so she told Tracy that she wanted to come in the apartment "to make sure that there was nobody hurt inside the residence, and basically be able to verify that no one else was injured inside." The officers then entered the apartment; one officer stayed with Tracy downstairs while the other officer proceeded upstairs. While looking in one of the rooms upstairs, the officer saw a marijuana-grow operation in plain view, but did not find any other persons. Tracy was charged by an amended information with manufacturing a controlled substance (marijuana); felony possession of a controlled substance (marijuana); and possession of drug paraphernalia. Tracy's husband was charged with the same crimes and the cases were consolidated. The husband filed a motion to suppress the evidence, and Tracy joined in that motion. After a hearing, the district court denied Tracy's motion to suppress, finding an exigent circumstance existed to justify the warrantless entry into the apartment. Tracy then entered a conditional plea of guilty to felony possession of a controlled substance, reserving her right to appeal the denial of her motion to suppress.[1] Tracy appeals.

---

[1] The manufacturing a controlled substance charge and the possession of drug paraphernalia charge were dismissed as part of the conditional plea agreement.

## II.
## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.
## ANALYSIS

Tracy argues that the district court erred by denying her motion to suppress. Specifically, Tracy contends that the district court erred by finding that an exigent circumstance justified the warrantless entry into Tracy's apartment.

The Fourth Amendment of the United States Constitution and article I, section 17 of the Idaho Constitution each forbid unreasonable searches and seizures.[2] *State v. Hansen*, 151 Idaho 342, 346, 256 P.3d 750, 754 (2011). "But when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 569 U.S. ___, ___, 133 S. Ct. 1409, 1414 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)); *accord State v. Reynolds*, 146 Idaho 466, 469, 197 P.3d 327, 330 (Ct. App. 2008). Accordingly, an officer's warrantless entry into a residence is presumptively unreasonable. *Reynolds*, 146 Idaho at 469-470, 197 P.3d at 330-31. The presumption may be overcome under a limited, well-recognized exception, such as the exigent circumstances exception. *Payton v. New York*, 445 U.S. 573, 589-90 (1980). Once inside a residence, "law enforcement officers may seize evidence in plain view, provided that they have not violated the

---

[2] Although Tracy contends that both constitutions were violated, she provides no cogent reason why article I, section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Tracy's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

Fourth Amendment in arriving at the spot from which the observation of the evidence is made." *Kentucky v. King*, 563 U.S. ____, ____, 131 S. Ct. 1849, 1858 (2011) (citing *Horton v. California*, 496 U.S. 128, 136-40 (1990)).

The exigent circumstances exception "applies when 'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'" *King*, 563 U.S. at ___, 131 S. Ct. at 1856 (alteration in original) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). Thus, warrantless searches may be performed by state agents "when there is compelling need for official action and no time to secure a warrant." *State v. Araiza*, 147 Idaho 371, 374, 209 P.3d 668, 671 (Ct. App. 2009). The United States Supreme Court has recognized a number of exigent circumstances. *Missouri v. McNeely*, 569 U.S. ___, ___, 133 S. Ct. 1552, 1558 (2013). Among these is "law enforcement's need to provide emergency assistance to an occupant of a home." *Id.* (citing *Michigan v. Fisher*, 558 U.S. 45, 47-48 (2009) (per curiam)); *Araiza*, 147 Idaho at 375, 209 P.3d at 672. We examine the totality of the circumstances to determine whether an exigency existed such that a law enforcement officer was justified in acting without a warrant. *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1559; *see also State v. Pearson-Anderson*, 136 Idaho 847, 850, 41 P.3d 275, 278 (Ct. App. 2001) ("In addressing Pearson-Anderson's argument, we must determine whether the officer's entry was reasonable in light of the totality of the circumstances.").

Tracy argues that there was not an exigent circumstance that permitted the officers to enter the apartment without a warrant. Tracy notes that when police arrived at the apartment, there was no yelling, no sounds, nor evidence of a fight. Additionally, Tracy contends that she came to the door and was uninjured. As for the children, Tracy maintains that there was no suspicion that the older child had any injuries. As for the younger child who had red marks, Tracy asserts she gave a reasonable and true explanation for the red marks. The State argues that the police were allowed to enter the apartment to ascertain the well-being of any persons inside. The district court found that an exigent circumstance existed, based on the totality of the circumstances. It determined that reasons existed for concern, even though Tracy attempted to assure the officers that there was no need for police concern. The district court also found that the officers had observed what appeared to be recent injuries to the younger child.

Applicable to this case is the exigent circumstance that permits a law enforcement officer to enter a residence "to render emergency assistance to an injured occupant or to protect an

4

occupant from imminent injury." *Araiza*, 147 Idaho at 375, 209 P.3d at 672 (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). We must look at the facts objectively to determine if the police officers had a reasonable belief that someone was in imminent danger or injured in the apartment, based on the facts known to the officers and reasonable inferences from the facts. *Id.* at 374-75, 209 P.3d at 671-72. In this case, when the officers decided to enter the apartment they knew they had responded to a domestic disturbance call made by a neighbor and the officers knew of prior incidents involving Tracy at the apartment. The officers did not hear any sounds of a disturbance upon approaching the apartment and they only saw Tracy and the older child after knocking on the door and during the initial discussion with Tracy. Additionally, the whereabouts of Tracy's husband were unknown. Even though the 911 caller had reported that the husband had left the residence and Tracy told officers that the husband had left, there was a back door to the apartment that one of the officers saw from their vantage point looking through the apartment.

Although the officers did not see any injuries to Tracy or the older child, after Tracy brought the younger child down to the officers, they saw red marks over the younger child's face, arms, and stomach, along with indentations. This prompted the officers to ask Tracy what was wrong with the child, and her response was that the child had been sleeping and that the marks would disappear.[3] The officer who testified at the suppression hearing testified as to her experience with both child abuse cases and domestic disturbance cases, and also noted that in her experience, children could be injured during domestic violence. She further testified that upon seeing the younger child, she became concerned that the child was injured and that the child was involved in the altercation between Tracy and her husband.[4]

We have addressed the exigent circumstances exception to the warrant requirement in domestic disturbance cases. In *Reynolds*, three officers were dispatched at night to investigate a telephoned report that Mrs. Reynolds was being held against her will by Mr. Reynolds. The officers arrived simultaneously and saw Mr. Reynolds standing just outside of the front door, which was ajar. Two of the officers approached Mr. Reynolds and began to question him about

---

[3]    Both officers testified that the appearance of the child concerned them. One officer said she did not feel that the child would look as it did just from waking up from a nap.

[4]    If the child was injured and the mother was not seeking or admitting to the need for help, a reasonable inference may be that she was afraid of or protecting someone.

the reported altercation. In the meantime, a third officer entered the home through the partially-opened front door. He did not hear any noises coming from the house, nor did he first knock, announce his presence, or call for Mrs. Reynolds. The State argued that the third officer's entry into the home was permissible due to an exigent circumstance. We concluded otherwise. *Reynolds*, 146 Idaho at 471, 197 P.3d at 332. With Mr. Reynolds outside, we noted that "it was apparent that if there was a woman in the house, she was under no immediate risk of harm from [Mr.] Reynolds while he was outside being questioned by an officer." *Id.* However, if the third officer "had first knocked or called out to occupants and received no response, the telephoned report of a woman being held against her will could have justified a warrantless entry to ensure that there was no one in the house who was physically restrained or too frightened to respond to the officers." *Id.* The only evidence the officer had in *Reynolds* when the officer entered the house was an unsubstantiated phone call. In contrast, the officers in this case, before entering the apartment, saw the younger child with red marks over its face, stomach, and arms. It was not unreasonable for the officers to have inferred that child was injured, based on the marks and the fact that the officers were responding to a report of a domestic disturbance.

In *State v. Wiedenheft*, 136 Idaho 14, 27 P.3d 873 (Ct. App. 2001), we upheld the officers' entry into Wiedenheft's residence based on the totality of the circumstances. Police officers were dispatched to Wiedenheft's residence in the early morning hours following a 911 call reporting a possible domestic violence altercation. When officers arrived, the house was dark and there were no noises coming from the home. The officers knocked on the door. An interior light came on and then went off again. Wiedenheft looked out the window and then closed the shade. The officers knocked again and Wiedenheft answered the door. One officer identified himself and explained to Wiedenheft that they were there to investigate the report of a battery. At this time, the officers noticed that Wiedenheft had a red swollen area in the middle of her forehead and appeared to have been recently injured. Wiedenheft also appeared to be shaking slightly, had an unsteady voice, and was visibly upset. After the officers requested to gain entry to the home, Wiedenheft refused, and an officer placed his foot in the door. We concluded that an exigency existed and justified the officers' warrantless entry into Wiedenheft's residence, based on the totality of the circumstances. *Id.* at 17, 27 P.3d at 876. Although upholding the warrantless entry, we cautioned "that a prompt and limited search of the scene

6

should be strictly circumscribed by the exigency, to assist an injured party or deal with the perpetrator, and cannot be used to support a general exploratory search." *Id.*

In this case, although Tracy stood in the door and visually appeared uninjured, the officers reasonably could have inferred that the younger child had been recently injured, viewing the red marks over the younger child's face, arms, and stomach. The officer's testimony at the suppression hearing, based on her experience with child abuse cases and domestic violence cases, noted her concern that the child had been involved in the domestic disturbance because of the perceived injury to the child. Additionally, the whereabouts of Tracy's husband were unknown, even though Tracy and the 911 caller said he had left the apartment. Because the 911 caller had reported loud noises, including what she thought was a female being thrown inside, it was not unreasonable for the officers to have been concerned about the well-being of the younger child when Tracy stood at the door visibly uninjured. In *Wiedenheft*, the circumstances of the apparent injury and the domestic disturbance call gave rise to an exigent circumstance that permitted law enforcement to enter the home. Here, the domestic disturbance call and apparent injury to the child give rise to an exigent circumstance permitting the officers to enter the apartment. Considering the totality of the circumstances, we are persuaded that an exigent circumstance existed that permitted the officers to make a warrantless entry into the apartment. The district court did not err by denying Tracy's motion to suppress. Accordingly, the withheld judgment entered upon Tracy's conditional guilty plea to possession of a controlled substance (marijuana) is affirmed.

Judge GRATTON **CONCURS.**

Judge LANSING **CONCURS IN THE RESULT.**