IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 40069

| STATE OF IDAHO, | ) | 2013 Opinion No. 55 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: October 22, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| KORI LYNN WARD, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

Order granting motion to suppress, <u>reversed</u> and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant.

Respondent did not participate in appeal.

_____

GRATTON, Judge

The State appeals from the district court's order granting Kori Lynn Ward's motion to suppress.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Officers responded to a third-party report that Ward had attempted to commit suicide by slitting her wrists. The two officers approached Ward's residence to determine if paramedics were necessary and to ensure her safety. The paramedics were parked down the street waiting for the officers to notify them it was safe to enter. The officers could hear loud music coming from the residence and they found a spent shotgun shell in the front yard. When one of the officers knocked on the door, Ward answered and opened the screen door outward, which the officer held onto to keep it from closing. Ward appeared emotionally upset and her mannerisms were erratic. Ward confirmed her identity but due to the loud music, the officer asked if she could turn down the music so they could talk. Ward walked to the stereo and pushed a button,

1

but the music continued to play loudly. Instead of returning to the front door, Ward retreated deeper into the residence. The officer holding the door open made several requests for Ward to return to the front door, but she did not respond. Fearing for Ward's safety, the officers entered the residence and guided Ward back to the living room.

The officers had Ward sit on a coffee table and they observed that she was intoxicated and her movements continued to be erratic. Ward mumbled incoherent and unrecognizable sentences and stated no one cared about her and she did not want to be there anymore. Ward's wrists had several scratches, and she had deeper cuts on her forearm that were still bleeding, but did not appear life-threatening. The officers then requested the assistance of the paramedics.

Ward denied drinking or consuming any substances, but beer bottles could be seen throughout the living room. One of the officers did a visual scan of the room for any bottles of prescription medication. The officers feared Ward may have ingested prescription medication in addition to her alcohol consumption. When asked, Ward affirmatively answered that there was a firearm in the residence and she began to get up. One of the officers had her sit back down while the other officer walked to retrieve a shotgun that was in the corner of the room. When the officer leaned over to secure the shotgun, he could see an open box that contained a glass pipe and methamphetamine.

The paramedics briefly attended to Ward, and she was transported to the hospital where she was placed on a mental hold. Ward was subsequently charged with possession of methamphetamine. Ward filed a motion to suppress the evidence found in her residence, which the district court granted. The State timely appeals.

## II.

## ANALYSIS

Ward's motion to suppress alleged officers violated her Fourth Amendment rights. The State responded that exigent circumstances justified the officers' warrantless entry into Ward's home. The district court granted Ward's motion to suppress, finding the officers created the exigent circumstances and they exceeded the scope of any exigency by searching for the shotgun.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

2

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Without a warrant, searches and seizures within a home are presumptively unreasonable. *Kentucky v. King*, __ U.S. __, __, 131 S. Ct. 1849, 1856 (2011); *State v. Smith*, 144 Idaho 482, 485, 163 P.3d 1194, 1197 (2007). The State can overcome this presumption by showing the government conduct fell within one of the exceptions to the warrant requirement. *King*, __ U.S. at __, 131 S. Ct. at 1856. One such exception exists where exigent circumstances "make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394, (1978). A law enforcement officer's reasonable belief of danger to the police or to other persons, inside or outside the dwelling, is one type of exigency that may justify a warrantless entry. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990); *State v. Araiza*, 147 Idaho 371, 375, 209 P.3d 668, 672 (Ct. App. 2009). Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Araiza*, 147 Idaho at 375, 209 P.3d at 672 (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)). The officer's subjective intent is irrelevant; instead, the State has the burden to show an officer has an objectively reasonable basis for believing a person within the house needs immediate aid. *Michigan v. Fisher*, 558 U.S. 45, 47 (2009).

Relying on *State v. Kelly*, 131 Idaho 774, 963 P.2d 1211 (Ct. App. 1998), the district court found the State failed to meet its burden to establish an exigency existed. In *Kelly*, the officer responded to a report of arson, finding a charred shed, a burning gas can, and footprints leading to the defendant's house. *Id.* at 775, 963 P.2d at 1212. A neighbor informed the officer that the fire might have been started by the defendant. The officer followed the footprints to the defendant's house where he peered through the windows in the front door and observed the defendant wearing a winter coat and hat. When the officer knocked on the door, the defendant glanced at the officer and then retreated deeper into the house. A subsequent knock was

3

answered by a woman. The officer asked if the defendant lived at the residence, but instead of answering, the women turned and walked back into the house--followed by the officer. This Court reversed the district court's finding that exigent circumstances justified the warrantless entry. We said that because the "claimed exigency was readily avoidable and was produced by the police officer's own unnecessary action, it did not validate the warrantless entry." *Id.* at 777, 963 P.2d at 1214. We reasoned the knock created the risk of destruction of evidence because the officer had the opportunity to withdraw and obtain a warrant before the defendant was alerted to the officer's presence. *Id.* Here, the district court reasoned that the officer asking Ward to turn down the radio created the exigency since officers could have kept her at the door and checked for serious injuries without the need for Ward to go deeper into her residence.[1]

However, the district court failed to analyze or consider the recent United States Supreme Court *King* decision wherein officers set up a controlled buy that led to the suspect hurrying toward an apartment complex with officers following. The suspect entered a breezeway that led to two adjoining apartments, and the suspect entered the apartment on the right. As the officers entered the breezeway, they heard a door shut but could not determine which apartment the suspect entered. The officers chose the apartment on the left because the smell of marijuana emanated from it. Banging on the door, the officers loudly announced, "police, police, police," or "this is the police." From inside the apartment came sounds of people moving around and items being moved. Fearing the destruction of evidence, the officers announced entry and kicked the door down. Officers found three occupants in the living room, one of whom was smoking marijuana, and a protective sweep led to the discovery of cocaine, marijuana, and drug paraphernalia.[2] *King*, ___ U.S. at ___, 131 S. Ct. at 1854.

The Kentucky Supreme Court held the government could not rely on the exigency exception because by knocking on the door, the officers had created the circumstances that led to the exigency. *Id.* at __, 131 S. Ct. at 1855. In reversing, the United States Supreme Court

---

[1]     On the contrary, however, even if officers determined Ward did not suffer from life-threatening injuries while she was at the door, it would have been irresponsible for officers to leave the residence without first determining if Ward presented a threat to herself, which required Ward to turn down the music to allow effective communication.

[2]     Officers then entered the apartment on the right and arrested the initial suspect. *King*, __ U.S. __, 131 S. Ct. at 1855.

4

concluded that where "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment," the State may rely on the exigency exception.[3] *Id.* at __, 131 S. Ct. at 1858. The United States Supreme Court expressly rejected the various lower court standards that placed police conduct outside of the exigency exception, including: whether officers' bad faith showed an intent to avoid the warrant requirement; whether the police could reasonably foresee that conduct would create the exigency; whether probable cause existed or if there is time to secure a warrant; and whether officers employed standard or good investigative tactics. *Id.* at __, 131 S. Ct. at 1858-62. In other words, "the exigent circumstances rule applies when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment." *Id.* at __, 131 S. Ct. at 1862. Thus, the *King* decision effectively overruled this Court's rationale in *Kelly*.

Applying *King* to the present case, officers were free to approach the residence and knock. The cultural invitation to allow visitors to approach and knock "permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Florida v. Jardines*, __ U.S. __, __, 133 S. Ct. 1409, 1415 (2013). After the officers knocked on Ward's front door, she answered and freely spoke with the officers. The officers' request to turn down the radio to allow improved communication again did not depart from customary conduct that would result from knocking on someone's front door. *See id.* at __, 133 S. Ct. at 1415-16 (concluding that officers employing a drug dog at the front door is outside custom; in contrast to expected activities such as solicitors, the Nation's Girl Scouts, or trick-or-treaters). The exigency did not arise until Ward retreated further into the residence and continued to ignore the officers' requests to return to the door. Ward identified herself as the individual who was reported as attempting to commit suicide, she appeared to be emotionally upset, and she ignored police requests to return to the front door. The officers did not threaten or violate Ward's Fourth Amendment rights, and their entry into the home to ensure her safety was reasonable. The district court erred in finding the officers were not within the exigency exception because they lawfully requested Ward to turn down the music and then entered when there was a reasonable fear that Ward's life could be in danger. Although the

---

[3] For purposes of its analysis, the United States Supreme Court assumed an exigency existed. *King*, __ U.S. at __, 131 S. Ct. at 1862.

district court declined to address whether an exigency existed under the facts, it is evident an exigency existed that warranted the officers' entry into the residence.

The district court also found that even if the officers had lawfully entered the residence, the additional search for the shotgun was outside the scope of the exigency. When officers enter without a warrant the search must be "strictly circumscribed by the exigencies which justify its initiation." *Mincey*, 437 U.S. at 393 (quoting *Terry v. Ohio*, 392 U.S. 1, 25-26 (1968)). However, officers may seize evidence or contraband that is in plain view in the course of a legitimate emergency activity. *Id.*

Here, officers found a spent shotgun shell outside Ward's house. While sitting on the coffee table, Ward told officers she had fired the shotgun outside earlier to see if anyone cared about her. Ward was under the influence of alcohol and officers had a reasonable belief, based on her behavior, that she may also be under the influence of a controlled substance. Ward made several alarming statements including that no one cared about her, she did not want to be there anymore, and that she had created an Avatar world and wanted to live there instead. She also claimed there was a spider cyst in her brain and she did not have long to live. When asked if there were any weapons, Ward attempted to get up and she looked towards the corner of the room. From where the officer stood, he could see the shotgun across the room. In retrieving the shotgun, the officer found the drugs in plain view. Under the circumstances, it was reasonable for the officer to secure the weapon not only for the safety of Ward and the officers, but also the paramedics who were on standby.

The district court speculated that it was safer to leave the shotgun in the corner since the officers were between Ward and the gun. Yet, this fails to take into account the nature of the situation the officers faced. The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving." *King*, __ U.S. at __, 131 S. Ct. at 1860 (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). The officers could have left a potentially loaded gun in the corner of the room when there was an unsecured woman, who appeared unstable, and had made statements threatening her own life; instead, they reasonably chose to secure the weapon. The officers acted within the scope of the exigency for which they entered Ward's residence.

6

## III.

## CONCLUSION

The officers lawfully entered Ward's residence, based on the belief there was a reasonable suspicion her safety was in jeopardy. The seizure of evidence during the investigation was lawful, based on the plain view doctrine. Therefore, the district court's order granting Ward's motion to suppress is reversed and the case is remanded for further proceedings.

Judge LANSING and Judge MELANSON **CONCUR.**