# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51551

STATE OF IDAHO,      )
     )
     Plaintiff-Respondent,      )     Boise, November 2025 Term
     )
v.      )     Opinion filed: February 3, 2026
     )
CHRISTOPHER ROBERT SMITH,      )     Melanie Gagnepain, Clerk
     )
     Defendant-Appellant.      )
     )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Cynthia Yee-Wallace, District Judge.

The judgment of the district court is affirmed.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Andrea W. Reynolds argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kale D. Gans argued.

_____

MOELLER, Justice.

This appeal concerns the warrantless seizure of a defendant's cellphone. Christopher Robert Smith was confronted by police concerning allegations that he had surreptitiously filmed his 13-year-old stepdaughter with his cellphone while she was in the bathroom. When police asked him to show them his phone, he handed it to police who then informed him that they were seizing it. Police later obtained a warrant to examine the contents of the phone. Based, in part, on the evidence obtained from the cellphone, a grand jury indicted Smith on two counts of Video Voyeurism (I.C. § 18-6605(2)), one count of Sexual Exploitation of a Child (I.C. § 18-1507(2)(c)), and one count of Lewd Conduct with a Minor Under Sixteen (I.C. § 18-1508).

Smith filed a motion to suppress the cellphone and its contents, asserting that the police violated his Fourth Amendment right by seizing his phone without a warrant and without a justified exception or exigency. The district court denied his motion to suppress and Smith entered a

1

conditional guilty plea, reserving a right to appeal the denial of his motion. Smith now appeals to this Court. For the reasons explained below, we affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Smith and his wife were married for approximately 11 years at the time of the incident in 2023 that precipitated this case. Smith's wife had three children from an earlier marriage: two girls, then ages 13 and 20 (the "younger stepdaughter" and "older stepdaughter"), and one son, then age 15. Smith's biological daughter from another relationship, then age 15, also lived at the house. She was not involved in the allegations related to this appeal.

In early January 2023, the younger stepdaughter told her mother that she had seen Smith's phone slide under the bathroom door while she was undressing to shower. Smith's wife then set up a hidden camera in the hallway. A few nights later, the video camera recorded Smith masturbating in the hallway outside the older stepdaughter's bedroom door. The recording on the hidden camera showed Smith repeatedly reaching down with the cellphone and then retrieving it to view it at the bedroom doors of both stepdaughters.

Smith's wife reported the incidents to the Meridian Police Department ("MPD") on January 19, 2023, and gave the police a "thumb drive" containing the video recordings from the hidden camera. She explained that these actions matched an earlier incident from several years earlier when the older stepdaughter was still a minor. The older stepdaughter told her mother that she had seen Smith's phone underneath the bathroom door. Smith's wife filed a report with the police on the earlier incident, but nothing came of that investigation.

After receiving the latest report from Smith's wife and viewing the video recordings, MPD detectives approached Smith in the parking lot of his workplace later that evening. They began by informing him that "there's another complaint that um just recently, that is going on . . . ." After the detective referenced the prior complaint regarding the older stepdaughter a second time, Smith responded: "at this point like after the whole first incident and all that stuff[,] I mean I would rather if I could talk to you guys with a lawyer present." Detective Washburn responded, "that's fine," and then asked Smith "[w]hat does your phone look like?" Smith handed the detective his cellphone, describing the brand and model. The detective then said, "I'm not here to question you . . . [b]ut what I am going to do is seize your phone." He later informed Smith that he had seen the video showing Smith masturbating outside one of his stepdaughters' bedroom doors, concluding, "that's why we're seizing your phone." Referencing the stepdaughters, the detective also explained

2

he had to "make sure that everyone is safe" until the police could determine the legitimacy of the report and who may be photographing the children. Detective Washburn kept the phone overnight, but did not search it.

The next morning, Detective Washburn obtained a warrant to search the contents of Smith's phone. Once accessed, MPD discovered that the cellphone contained pictures and videos of all three of Smith's stepchildren that were captured from underneath their bedroom doors and the bathroom door. Following a grand jury proceeding, an indictment was filed on February 28, 2023, charging Smith with two counts of Video Voyeurism, a felony under Idaho Code section 18-6605(2), one count of Sexual Exploitation of a Child, a felony under Idaho Code section 18-1507(2)(c), and one count of Lewd Conduct with a Minor Under Sixteen, a felony under Idaho Code section 18-1508. Smith pleaded not guilty to the four counts. He then filed a motion to suppress the photographic and video evidence on his cellphone, arguing that Detective Washburn's initial seizure of the cellphone violated his Fourth Amendment right against unreasonable seizures.

The State offered five exhibits at the hearing on the motion to suppress, all of which were admitted, including the audio and bodycam video recordings from the MPD officers' initial conversation with Smith in the parking lot. Detective Washburn testified concerning the wife's report about Smith. He recounted his viewing of the footage from the hidden camera, which he testified depicted Smith masturbating at a stepdaughter's bedroom door as Smith repeatedly reached down to look at his phone and then place it back at the door.

Detective Washburn further explained that, based on his experience investigating child exploitation cases, he had seized phones without a warrant because defendants typically delete photographic and video evidence "immediately" if "there is any heads up that [the police] may be conducting investigations . . . ." He also testified that another detective wanted to interview the children later that same day and he was worried that Smith would delete the evidence on his phone if anyone from the residence called or texted Smith to let him know police were investigating a voyeurism report. On cross-examination, Detective Washburn acknowledged that officers had the ability to contact on-call magistrates and seek telephonic warrants.

The district court denied Smith's motion to suppress at the end of the hearing. It concluded that the warrantless seizure of Smith's phone was reasonable under the exigent circumstances exception for imminent destruction of evidence. The court found that Detective Washburn had experience with exploitation cases and was reasonably concerned that Smith could quickly delete

3

the images and videos on his phone while police sought a warrant. The court concluded that the detective had "reasonable suspicion" to believe Smith's phone contained evidence of a crime and that the timing of the seizure was reasonable. Finally, the court determined that the seizure of the cellphone had lasted no longer than reasonably necessary to secure a search warrant because the detective seized the phone on the evening of January 19, 2023, and secured a search warrant the following morning.

Prior to trial, Smith accepted a plea offer, which allowed him to enter a conditional plea of guilty to one count of Sexual Exploitation of a Child, a felony under Idaho Code section 18-1507(2)(c), while preserving his right to appeal the denial of his motion to suppress. The district court then sentenced him to a 30-year prison term, with 7 years fixed and the remaining 23 years indeterminate. As a condition of Smith's sentence, the court ordered him to comply with 15 different conditions covering a broad scope of conduct, should he be released on parole. Smith appealed those conditions to this Court. Before oral argument, the State advised this Court that the district court had entered an amended judgment of conviction on November 8, 2024, which removed the conditions; however, the amended judgment had not been included in the record on appeal. We granted the State's motion to augment the record without objection from Smith.

## II.     STANDARDS OF REVIEW

When reviewing the denial of a motion to suppress on appeal, the standard of review is bifurcated. *State v. Popp*, ___ Idaho ___, ___, 571 P.3d 453, 458 (2025). This means that "[w]e defer to the trial court's 'findings of fact if supported by substantial and competent evidence. This Court, however, exercises free review of the trial court's conclusions of law.' " *State v. Ish*, 174 Idaho 77, 88, 551 P.3d 746, 757 (2024) (quoting *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000)). Our "free review" requires us to evaluate the "trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *State v. Karst*, 170 Idaho 219, 222, 509 P.3d 1148, 1151 (2022) (quoting *State v. Samuel*, 165 Idaho 746, 755, 452 P.3d 768, 777 (2019)).

## III.     ANALYSIS

**A.     The district court properly concluded that the warrantless seizure of Smith's cellphone, based on the "destruction of evidence" exigency, did not violate the Fourth Amendment.**

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

4

seizures . . . . " U.S. Const. amend. IV. Consistent with this right, we have held that "[w]arrantless searches and seizures are presumptively unreasonable under the Fourth Amendment." *State v. Wulff*, 157 Idaho 416, 419, 337 P.3d 575, 578 (2014). However, this is not an irrebuttable presumption. "To overcome the presumption of unreasonableness, the State bears the burden of demonstrating that the search or seizure either fell within one of the well-recognized exceptions to the warrant requirement 'or was otherwise reasonable under the circumstances.' " *State v. Adams*, ___ Idaho ___, ___, 573 P.3d 1159, 1163 (2025) (quoting *State v. Hoskins*, 165 Idaho 217, 221, 443 P.3d 231, 235 (2019)).

An exception to the warrant requirement exists when, based on exigent circumstances, "the needs of law enforcement [are] so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *State v. Blancas*, 170 Idaho 631, 634, 515 P.3d 718, 721 (2022) (second alteration in original) (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011)). One such exigent circumstance occurs when there is a risk of the imminent destruction of evidence. *Id.* "In determining whether the officers reasonably feared imminent destruction of evidence, the appropriate inquiry is whether the facts, as they appeared at the precise moment in question, would lead a reasonable, experienced officer to believe that evidence might be destroyed before a warrant could be secured." *State v. Holton*, 132 Idaho 501, 504, 975 P.2d 789, 792 (1999). We have more recently clarified that "[t]he exigent circumstance exception does not apply [to a search] when there is time to secure a warrant." *State v. Smith*, 168 Idaho 463, 472, 483 P.3d 1006, 1015 (2021).

Smith argues that the district court erred in denying his motion to suppress because the State failed to meet its burden to show that the warrantless seizure of his cellphone satisfied the exigent circumstances exception. He argues that no exigency existed until the police created one by contacting Smith and notifying him of their investigation. In Smith's view, the police were not presented with a "now or never" situation until they created the situation through their own conduct. The State responds by noting that the district court correctly found the exigent circumstances exception justified the warrantless seizure of Smith's phone. Specifically, it asserts that officers with probable cause that a cellphone holds evidence of a crime may seize the property if the exigencies cited by the officers support the seizure.

The applicability of the exigent circumstances exception to the warrantless *seizure* of a cellphone is a matter of first impression in Idaho. However, this Court has addressed exigency based on the destruction of evidence for a warrantless *search* in several contexts. For example, we

have discussed warrantless searches under the following circumstances: entering a home to search for evidence of a homicide (the body), *Smith*, 168 Idaho at 472–73, 483 P.3d at 1015–16; detaining an individual to search for drugs in his mouth, *Holton*, 132 Idaho at 504–05, 975 P.2d at 792–93; and performing a warrantless blood draw in a driving under the influence case, *Blancas*, 170 Idaho at 634–37, 515 P.3d at 721–24. For the warrantless entry of a home in *Smith*, the Court considered the presence of individuals in the home who might be destroying evidence, knowledge of ongoing actions to destroy evidence, and the suspect's reentry into the home, which reasonably risked further destruction of evidence. *Smith*, 168 Idaho at 473, 483 P.3d at 1016. For the warrantless search of a suspect's mouth for drugs in *Holton*, the Court considered the suspect's aggressive chewing while the police saw a plastic baggie in his mouth, physical signs of intoxication, and the possibility that the suspect could asphyxiate on the baggie if he tried to swallow the baggie of methamphetamine. *Holton*, 132 Idaho at 504–05, 975 P.2d at 792–93. In *Blancas*, the Court considered the evidentiary needs of the State for a conviction, the amount of time that had passed since detaining the suspect, the dissipation of alcohol from his bloodstream, and the amount of time required to obtain a warrant. *Blancas*, 170 Idaho at 635–36, 515 P.3d at 722–23. Although these cases had different results, in each instance this Court looked at the totality of the circumstances to determine the reasonableness of the warrantless search to evaluate whether an exigency existed. *See id.* at 636, 515 P.3d at 723.

Applying the same constitutional measuring stick to the *seizure* at issue in this case, we look to the compelling needs Detective Washburn testified to at the suppression hearing to determine whether the warrantless seizure of Smith's cellphone was constitutionally justified: (1) preserving the evidence and (2) protecting the children. While there was little evidence offered in support of his assertion that an immediate seizure was necessary to protect the children, we conclude that the district court properly focused on the risk of losing vital evidence necessary to secure Smith's conviction (i.e., proof that Smith had actually recorded images of the stepdaughters on his cellphone for a sexual purpose). Detective Washburn testified of his concern that if he returned the phone, Smith could quickly delete that evidence. Based on this evaluation, we hold that the district court correctly determined that it was "reasonable for the officers to infer" that Smith "could have destroyed evidence" or could have "contacted someone else to destroy the evidence." *See Smith*, 168 Idaho at 473, 483 P.3d at 1016.

6

The record demonstrates that the State provided persuasive evidence of these circumstances confronting the officers at the time of the seizure. On direct examination, Detective Washburn described how he seized the phone because, in his experience, suspects can delete incriminating images "immediately" if there is any "heads up" of an investigation. He explained that someone at the residence could notify Smith that detectives were at the home. Importantly, the detectives' belief that incriminating evidence would be found on Smith's phone was not mere speculation, baseless conjecture, or even an educated hunch. Smith's wife explained that both stepdaughters had witnessed Smith's phone sliding underneath the bathroom and bedroom doors. Smith's wife also provided the police with a thumb drive containing video of Smith engaging in the alleged conduct a few days earlier in the home. Detective Washburn watched the video on that thumb drive, which showed Smith masturbating in the hallway as he repeatedly placed his phone at a stepdaughter's bedroom door and then retrieved it to examine its contents. Detectives were also aware of a previously reported incident where the older stepdaughter had claimed someone recorded her on a cellphone while she was in the bathroom.

A review of the United States Supreme Court's decisions concerning warrantless seizures further supports the district court's conclusions. The Supreme Court has explained that:

> Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.

*United States v. Place*, 462 U.S. 696, 701 (1983). The Supreme Court has also observed that seizure of a phone to prevent it from locking and encrypting data could be a "now or never situation," as articulated in *McNeely*. *See Riley v. California*, 573 U.S. 373, 391 (2014) (quoting *Missouri v. McNeely*, 569 U.S. 141, 153 (2013)). While *Riley* concerned the search of a cellphone obtained from a search incident to arrest, it stated that the "imminent destruction of evidence" would be an exception justifying the warrantless search of a phone. *Id.* at 402. It is worth noting that in this case, the detectives obtained a warrant *before* searching Smith's phone.

Smith raises several arguments suggesting that the destruction of evidence exigency does not apply to his case. First, he asserts the police had time to secure a warrant before seizing his phone. On cross-examination, Detective Washburn acknowledged he was aware that there were on-duty prosecutors and on-call magistrates who were available. However, this argument is not availing for several reasons. First, all our cases requiring the police to show they did not have time

7

to secure a warrant concerned *searches*, not *seizures*. *See, e.g.*, *Blancas*, 170 Idaho at 637, 515 P.3d at 724. In reaffirming the "no time to secure a warrant" requirement, *Blancas* harkened to *McNeely*, both of which addressed warrantless blood draws, which are searches, not seizures. 170 Idaho at 635, 515 P.3d at 722 (citing *McNeely*, 569 U.S. at 149). Here, given the ease and speed with which the defendant could have deleted the evidence from his cellphone, the district court found that the detectives reasonably needed time to secure the phone while they obtained a warrant to search it the following day. We agree with the district court's finding that the seizure of Smith's phone for one evening, which was long enough to secure a search warrant the next morning, demonstrates the detectives' compliance with the Fourth Amendment.

Second, Smith asserts that since this was a police-created exigency, the exception does not apply. This theory renders a warrantless search or seizure "to prevent destruction of evidence" unlawful "when that exigency was 'created' or 'manufactured' by the conduct of the police." *King*, 563 U.S. at 461. The United States Supreme Court rejected this theory in *King*, when it held: "[A] rule that precludes the police from making a warrantless entry to prevent the destruction of evidence whenever their conduct causes the exigency would unreasonably shrink the reach of this well-established exception to the warrant requirement." *Id.* at 461–62. Smith also relies on *State v. Kelly*, which held that warrantless entries into a home based on exigencies created by the police's own conduct are unlawful. 131 Idaho 774, 777, 963 P.2d 1211, 1214 (Ct. App. 1998). However, the Idaho Court of Appeals later recognized that *King* had overruled *Kelly*'s rationale, which had supported the police-created exigency doctrine. *State v. Ward*, 155 Idaho 332, 335, 312 P.3d 323, 326 (Ct. App. 2013). We agree with the Court of Appeals' reasoning; thus, Smith's reliance on this rejected doctrine is unavailing.

We note that the basis for Smith's argument that this was a police-created exigency is that the police decided to first question Smith about the incident before seeking a warrant. We emphasize that it is improper for courts to fault police for questioning a suspect—pursuant to a credible report of criminal conduct—rather than immediately arresting him or seeking a search warrant. *King* held that police conduct that neither violates nor threatens to violate the Fourth Amendment cannot be used against them: "[w]hen law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. . . . [T]he occupant has no obligation to open the door or to speak." *King*, 563 U.S. at 469–70. Here, detectives approached Smith in the parking lot of his employer and he chose to initially speak with

the detectives when they approached him. The detective mentioned the ongoing voyeurism investigation within approximately 20 seconds after beginning the conversation. They did not hide their purpose for asking Smith questions. In short, *King* instructs us that "[f]aulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution." *Id.* at 467. Requiring the police to obtain a warrant "as soon as the bare minimum of evidence needed to establish probable cause is acquired" "unjustifiably interferes with legitimate law enforcement strategies," like questioning a suspect before securing a warrant. *Id.* at 466.

Third, Smith argues that law enforcement's concerns about the destruction of evidence were generalized and not particularized to his conduct. In other words, notwithstanding the detective's experience with other suspects, the detective articulated no reason to believe that Smith would destroy evidence or put the children at risk. Smith relies on authority from Florida, where a defendant's actions manifested an intent to destroy evidence by actively swiping on the screen of his cellphone before police seized the phone. *State v. Darter*, 350 So.3d 370, 385 (Fla. Dist. Ct. App. 2022). Notwithstanding the Florida case, we have held that the exigent circumstances exception to the warrant requirement does not require a "particularized" belief because we apply a totality of the circumstances analysis. *See Blancas*, 170 Idaho at 636, 515 P.3d at 723. Here, detectives had seen video evidence of Smith's voyeurism of his stepdaughter and reasonably believed that evidence of that crime was contained on Smith's phone—especially after Smith confirmed the phone in his possession was the only phone he owned. Of course, had the officers waited until they observed Smith attempting to throw his phone in the Boise River, removing the SIM card, or even stomping on the phone with his foot in the parking lot, this certainly would have given officers greater support for their destruction of evidence exigency; however, this is not the standard we apply. All that is necessary, as the district court found below, is that the totality of the circumstances at the time of the seizure supported the officers' conclusion that there was sufficient risk of destruction of evidence to authorize seizing the phone.

Again, reviewing the totality of the circumstances present in this case, the detectives obtained compelling information of video voyeurism involving at least two minors. This evidence included their own viewing of video recordings of Smith's conduct, an unsolicited report from Smith's wife, second-hand reports from Smith's stepchildren (through the wife), and knowledge of a possible prior incident with Smith mirroring the same conduct as depicted in the video. The

detectives were faced with the possibility that all evidence on Smith's phone could be destroyed within seconds had they returned the phone to him. The timing of these circumstances further supports the State's decision to immediately *seize* the phone that evening as they worked towards securing a warrant to search the contents of the phone the following morning.

Therefore, applying the factual findings of the district court to the constitutional requirements of the Fourth Amendment to the United States Constitution, we are convinced that the district court properly applied the destruction of evidence exigency to the police's warrantless seizure of Smith's phone. Accordingly, we affirm the district court's order denying the motion to suppress.

**B.**     **Our application of the destruction of evidence exigency in this case does not create a per se exception for cellphones in other cases.**

We pause to briefly make a crucial point. Contrary to Smith's argument that applying the destruction of evidence exigency to the facts in this case would be tantamount to creating a per se exception for cellphones that would resemble the automobile exception, *see Carroll v. United States*, 267 U.S. 132, 153 (1925), our holding does not create a per se exigency. We reaffirm "that to invoke the exigent circumstances exception to the Fourth Amendment, the State must prove, under the totality of circumstances, that a reasonable officer would have believed he was presented with a 'now or never' situation." *Blancas*, 170 Idaho at 637, 515 P.3d at 724. As explained above, our review of the circumstances faced by the officers in this case supported the district court's determination that such an exigency existed—the imminent destruction of incriminating evidence.

The Supreme Court and other federal courts have recognized similar exceptions to the Fourth Amendment's protection of a person's property from warrantless searches and seizures of containers that could hold evidence or contraband. *See, e.g.*, *United States v. Donnes*, 947 F.2d 1430, 1436 (10th Cir. 1991). For years, federal courts have applied the warrantless seizure of "containers," as described in *United States v. Place*, 462 U.S. 696 (1983), to cellphones when exigent circumstances exist. They have done so without creating a per se exception for cellphones. *See Andersen v. DelCore*, 79 F.4th 1153, 1160–61, 1166–67 (10th Cir. 2023); *United States v. Babcock*, 924 F.3d 1180, 1194–95 (11th Cir. 2019); *United States v. Santillan*, 571 F. Supp. 2d 1093, 1103–04 (D. Ariz. 2008). We acknowledge that some courts have distinguished items like luggage, boxes, and bags from cellphones, and excluded cellphones from the search incident to arrest exception to the warrant requirement. *See, e.g.*, *United States v. Lara*, 815 F.3d 605, 610–11 (9th Cir. 2016); *United States v. Camou*, 773 F.3d 932, 942–43 (9th Cir. 2014). Those decisions

do not conflict with our holding because the police in this case did not justify the seizure of the phone as a search incident to arrest. Importantly, the State has not argued, as the State of Missouri did in *McNeely*, that it is entitled to a per se rule allowing for warrantless searches. *See McNeely*, 569 U.S. at 151.

In sum, the exigency here was predicated on the following circumstances: (1) the State had probable cause to believe evidence of a crime was on Smith's phone; (2) under the totality of the circumstances, the imminent destruction of evidence was a real risk; and (3) after seizing the phone, the State did not search it until after they had secured a warrant from a magistrate. We conclude that by denying the motion to suppress based on these findings, the district court applied the correct constitutional standards. Accordingly, we affirm the district court.

## C. Regardless of the district court's unfortunate use of the term "reasonable suspicion" in explaining its decision, the record establishes that the police had probable cause to seize the phone.

Smith argues the district court applied an incorrect legal standard in evaluating his motion to suppress because it erroneously concluded that the State had "reasonable suspicion" that Smith's phone contained evidence of a crime, instead of "probable cause." He argues that this Court must remand the decision to the district court for reconsideration because it committed an error of law. "A question of evidentiary standards is a question of law over which this Court exercises free review." *Turner v. Turner*, 155 Idaho 819, 823, 317 P.3d 716, 720 (2013).

Under the Fourth Amendment, any search or seizure must be supported by probable cause. U.S. Const. amend. IV. "Probable cause is established when the totality of the circumstances known to the officer at the time of the search would give rise—in the mind of a reasonable person—to a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Howard*, 169 Idaho 379, 383, 496 P.3d 865, 869 (2021) (citation omitted). Based on the district court's factual findings, to which we give deference, we conclude that the evidence the State presented at the hearing on the motion to suppress was sufficient to establish that the police had probable cause. *State v. Ish*, 174 Idaho 77, 88, 551 P.3d 746, 757 (2024) ("This Court, however, exercises free review of the trial court's conclusions of law." (quoting *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000))). Thus, the district court's mistaken use of the term "reasonable suspicion," is not fatal to its ruling.

As discussed above, there was compelling evidence admitted at the suppression hearing establishing that, at the time of the seizure, the detectives: (1) had personally observed a video

depicting Smith in a possible act of video voyeurism involving at least two minors; (2) reasonably concluded that there was a high probability that evidence of the crime was contained on a cellphone used by Smith; and (3) confirmed that the cellphone Smith had just handed them was his only cellphone. Therefore, applying the law to these facts in the record, we conclude that the totality of the circumstances provided the detectives with probable cause to believe that evidence of a crime would be on Smith's personal cellphone.

We further note that the State had articulated its reliance on probable cause—not reasonable suspicion—in opposing Smith's motion to suppress. The State argued in its brief that it had probable cause to seize the phone. On direct examination, Detective Washburn testified: "I had probable cause to believe that there was evidence on the phone of video voyeurism . . . ." The district court recounted the detective's articulation of probable cause in its findings of fact. In two of the cases the district court cited to support its application of the exigency, it included parentheticals referencing probable cause. Accordingly, notwithstanding the inadvertent misstatement of law by the trial court, probable cause was the standard argued and supported by the State from the beginning. Thus, we can find no error here.

**D.      Smith's argument about the parole conditions added to his sentence is moot.**

Smith argues that the district court abused its discretion by including 15 conditions in his judgment of conviction that must be imposed if he is to be released on parole. However, prior to oral argument, the district court entered an amended judgment removing those conditions. Therefore, we decline to review Smith's argument because the issue is now moot.

## IV.      CONCLUSION

We conclude that the district court properly determined that, based on the totality of the circumstances and the imminent risk of destruction of the evidence on the cellphone, the detectives' warrantless seizure of Smith's phone was proper under the Fourth Amendment. Therefore, we affirm the district court.

Chief Justice BEVAN, Justices BRODY, ZAHN, and MEYER CONCUR.